1844.

Vroom
v.
Van Horne.

VROOM, administratrix, *vs.* VAN HORNE and others.

Where a resident of New-Jersey filed a bill in the court of chancery of the state of New-York, as the junior mortgagee of lands in this state, to redeem such lands from a prior mortgage, and the complainant died pending the suit, and his widow who had taken out letters of administration upon his estate in the state of New-Jersey, afterwards compromised the suit with the defendants and gave them a release of the decedent's mortgage and of the right to redeem by virtue of the same; and after such release the widow of the decedent took out letters of administration in this state, and then filed a bill of revivor and supplement, as such administratrix, to revive the suit and to set aside such compromise; *Held,* that the grant of the letters of adminis-

tration in this state related back to the time of the death of the intestate, and estopped the administratrix from alleging that she had no right to compromise the claim and to release the defendants.

And it seems that if a third person had taken out letters of administration in this state, after the release and compromise by the administratrix appointed in New-Jersey, where the decedent was domiciled, the court of chancery here would not have interfered to declare the compromise and release void, if there were no creditors here who had claims against the estate of the decedent.

The succession to the personal property, of a person dying intestate, is governed by the law of the place where the decedent was domiciled at the time of his death.

In cases of intestacy, the right of the administrator, where he is not entitled to the succession, depends upon the grant of power to administer the decedent's property, by the proper tribunal. And such grant of power cannot extend, as a matter of right, beyond the territory of the government making the grant; even where the grant is by the proper tribunal of the place where the intestate was domiciled at the time of his death.

The right of an administrator to recover the property, or to recover the debts due to the decedent, out of the territorial jurisdiction of the government where the grant of administration is obtained, and which property or debts cannot be reached through the medium of its courts, depends upon the comity of the state or country where the property is situated, or where the debtor of the intestate resides, or where the estate upon which such debt is a lien is found.

As a general rule an executor or administrator who has been duly authorized to administer the decedent's estate, by the proper tribunal of the place where the decedent was domiciled, to enable him to bring a suit in relation to the decedent's property in another state or country than that in which the decedent was domiciled, must obtain ancillary letters testamentary, or of administration, in such state or country.

But it seems that the probate of the will of the decedent, or the grant of letters testamentary or of administration, by the proper tribunal of his domicil, is sufficient to authorize his executor or administrator to take charge of the property of the decedent and to receive debts due to him in this state, where no suit is necessary, if there is no conflicting grant of letters testamentary or of administration here.

THIS was an appeal from a decree of the late assistant vice chancellor of the first circuit, dismissing the complainant's bill of revivor and supplement. The original bill was filed by Peter Vroom, a resident of the state of New-Jersey, as a junior mortgagee of a lot of land in Seneca county, to redeem the mortgaged premises from a statute foreclosure and sale which had taken place under a prior mortgage. The purchaser at that sale had conveyed the premises to the defendant Van Horne ; who subsequently

conveyed to P. Smith, with warranty; and Van Horne and Smith, together with Ditmas and wife, were made defendants in that suit. Smith afterwards died and the suit was revived against his heirs at law. The cause was heard before the vice chancellor of the seventh circuit. He decided in favor of the complainant's right to redeem under his smallest mortgage, for $312 and interest, but came to the conclusion that the other mortgage, which was for $690 and interest, was void for usury. He accordingly decreed that the complainant should be permitted to redeem, and that the premises be sold to satisfy the amount due upon the $312 mortgage, unless the defendants should elect to pay that amount; but that in case of such election and payment the premises should be discharged from both mortgages. A reference to a master was directed accordingly, and both parties were decreed to pay their own costs. In October, 1831, the solicitor for P. Vroom, the then complainant, gave notice of an appeal from the whole of that decree, except so much thereof as declared the complainant's right to redeem under his $312 mortgage. Vroom died in November, 1831, and a few days thereafter administration upon his estate was granted to his widow, the present complainant, by the surrogate of Somerset county, in New-Jersey, where the decedent was domiciled at the time of his death. The solicitors of the respective parties, being unaware of the death of Vroom, brought the case to argument upon the appeal, in the summer of 1832. And in August, 1834, the chancellor delivered his opinion affirming so much of the decree of the vice chancellor as related to the costs, but reversing the part thereof which declared the $690 mortgage to be usurious and void, &c. This decree, upon a subsequent application, was directed to be entered nunc pro tunc as of some day subsequent to the appeal and previous to the death of P. Vroom; but without prejudice to the right of the defendants, upon an application to revive the suit, to insist upon the release hereafter mentioned as a bar to the revival of the suit, in the name of the personal representatives of the decedent or otherwise. (*See* 4 *Paige's Rep.* 526; *and* 5

*Idem*, 528, *S. C.*)   The decree upon the appeal was entered accordingly.

In the fall of 1832, while the appeal was pending and undecided before the chancellor, Van Horne met with a neighbor of Mrs. Vroom, the administratrix, and learning from him that she and the family were disposed to compromise the suit, a negotiation took place between the defendant Van Horne and the administratrix, which finally resulted in an agreement to compromise the suit, except so far as related to the personal liability of Ditmas, upon Van Horne's paying to her $300, and each party paying their own costs.   This arrangement was completed in February, 1833, and the $300 was paid to her as the administratrix of her deceased husband.   And she thereupon, as such administratrix, executed an instrument under her hand and seal, releasing and discharging the two mortgages, and Van Horne, and all others interested in the mortgaged premises except Ditmas, from all suits, complaints, orders and decrees for or on account of such mortgages.   But as neither party gave any notice of this compromise of the suit to the chancellor, he subsequently examined and decided the case upon the appeal, without being aware that any such settlement had been made.

In September 1836, the complainant applied to the surrogate of New-York, and upon an allegation that assets belonging to the decedent had since his death come into that county, she obtained letters of administration in this state. And she thereupon filed her bill of revivor and supplement in this suit, as such administratrix, to set aside the compromise and release so made and executed by her in New-Jersey, as the administratrix appointed under the laws of that state, and to revive the suit and have the benefit of the decree made upon the appeal to the chancellor.   The bill alleged fraud and misrepresentation, on the part of Van Horne, in obtaining the release ; which was denied by the answers.   The cause was heard upon the pleadings and proofs before the assistant vice chancellor, to whom it was referred for decision.   He arrived at the conclusion that

the compromise and release were fairly made and obtained; and that they constituted a valid discharge of the claim upon the premises under the two mortgages, although the complainant had when the compromise was made only taken out administration in the state where her husband was domiciled, at the time of his death. He therefore dismissed the complainant's bill of revivor and supplement as to the defendant Van Horne and the heirs and representatives of Smith his grantee, but without costs. From this decree the complainant appealed to the chancellor.

*Asgill Gibbs,* for the appellant.

*L. H. Sandford,* for the respondents.

THE CHANCELLOR. The assistant vice chancellor was unquestionably right in supposing that there was nothing in this case to justify him in setting aside the release, and compromise, upon the ground that they were obtained by fraud or misrepresentation, or by the concealment of any material fact from Mrs. Vroom which it was the duty of the adverse party to communicate to her upon making such a compromise. On the contrary, I think Van Horne's letter to the complainant, of the 23d of January, 1833, contained as fair and impartial a statement of the whole transaction, and of the then state of the litigation and of the probable result thereof, as any one could reasonably expect in such a case. And I have not been able to find any evidence that all the material facts stated in that letter were not substantially true. As to the complainant's costs in the proceedings before the vice chancellor, previous to the appeal, having been paid, Van Horne does not speak of it as a fact as to which he has any personal knowledge; but, as I understand the letter, he refers to it as a matter of which she has herself the means of knowledge. From the testimony of Lowe, Van Horne certainly had, at that time, reason to suppose that the decedent had paid those costs. He also had a right to presume that the solicitor of Vroom,

the original complainant, had communicated to his client the result of the vice chancellor's decision. And whether he was right, in point of law, in supposing that the solicitor would himself be liable for the costs, if the appeal was carried on without the knowledge or consent of the client, was a question about which one party was probably as competent to judge as the other. From Mrs. Vroom's letter of the 4th of February, it is probable she had consulted with Gov. Vroom, the relative of her husband, on the subject. And if she chose to accept the compromise offered, instead of following his advice, or consulting with the solicitor who had the charge of the suit in this state, it certainly was not the fault of Van Horne.

If the question of inadequacy of consideration could arise upon a compromise of this kind, it would be proper to determine it by the probable result of the litigation at the time when such compromise was made. At the time of the compromise a decree had been made by the proper tribunal declaring the large mortgage void ; under which decision it would probably cost at least fifty dollars, as stated in Van Horne's letter, to execute the reference as to rents and profits, &c. and to take the other necessary steps to perfect the decree, so as to entitle the administratrix to the amount due upon the $312 mortgage. Those costs the decree had directed to be borne by the complainant ; as they were for proceedings which must necessarily be taken by her solicitor to entitle her to payment if the decree was affirmed. And if she went on with the appeal and it should be decided against her, in case she sanctioned the proceedings of her solicitor which she states in her letter to have been had without her knowledge, the estate of her husband would be subjected not only to the costs of the adverse party, which were relinquished by the compromise, but also to the costs of her own solicitor upon the appeal ; even if the party against whom a decision was made should not think proper to carry it to the court of dernier resort. For if the decree of the vice chancellor was affirmed upon appeal, it was almost a matter of course

to charge the appellant with the costs. Whether a discreet and prudent lawyer would have advised such a compromise, upon this state of facts, must therefore have depended upon his opinion as to the probability of the eventual success of the complainant, upon the questions raised by the appeal, in this court, and in the court of dernier resort.

It remains to consider whether the complainant can succeed upon the technical ground, that she could not compromise the claim for this debt, depending upon an equity to recover it out of real estate here, under the letters of administration granted upon her husband's estate in New-Jersey. The law is well settled, not only in this state but as I believe in nearly every civilized country, that what may properly be considered as the personal estate of a deceased person is to be treated, for the purposes of the succession, as having no other locality than that of the decedent's domicil. And if he dies intestate the succession is governed by the law which prevails in the place where he was domiciled at the time of his death. (*Bruce* v. *Bruce,* 2 *Bos. & Pul. Rep.* 229, *n. a.* *Bempde* v. *Johnstone,* 3 *Ves.* 198. *Story's Conf. of Laws,* 2d ed. 403, § 481. 4 *Burge's Conf. of Laws,* 156.) But the recovery of the property, and the distribution thereof after making provision for the payment of the debts of the decedent, must, from the necessity of the case, very frequently depend upon the *lex loci rei sitæ ;* especially where suits are necessary to enable those who are entitled to the succession to reduce the effects to possession. By the laws of some states, and countries, where the decedent has made a will, and was named an executor to administer his estate, such executor becomes entitled to the possession of the whole of the personal estate of the testator immediately upon his death ; and actual probatè of the will is only necessary to enable the executor to recover the property by suit. Such was the English common law, and the law of this state previous to the revised statutes. Where such a law exists, the probate and granting of letters testamentary is a mere legal form ; as such an executor does not derive his title from the letters testamentary, but under the

1844.

Vroom
v.
Van Horne.

will. He may therefore take possession of the property, receive payment of debts, and may release a right of action, before such letters are granted. (*Coke Litt.* 292, *b.* *Hensloe's case*, 9 *Coke* 39, *a.* *Smith* v. *Milles*, 1 *Dur. & Ea. Rep.* 480.) But in cases of intestacy, the right of the administrator, except where he is the person entitled to the succession, must, in equity as well as at law, depend upon his grant of a power to administer, by the proper tribunal. And even where such a grant has been made by the tribunal of the state or country where the decedent was domiciled at the time of his death, the grant, as Judge Story very correctly observes, cannot extend, as a matter of right, beyond the territory of the government making the grant. (*Story's Conf. of Laws*, 421, § 512.) The right of such administrator to recover property, or debts, belonging to the decedent, beyond the territorial jurisdiction of the government making the grant, and which cannot therefore be reached through the medium of its courts, must of course depend upon the comity of the state or country where the property is situated; or where the debtor, or his property upon which the debt is a lien, is found. Hence difficulties must frequently arise in collecting the debts, and in administering the personal estate of the decedent, where his property and the debts due to him are in several different states, or countries, whose laws are dissimilar.

As a general rule, both in England and in this country, to enable an executor, or an administrator who has been duly authorized to administer the decedent's estate by the proper tribunal of the place where he was domiciled, to bring a suit in relation to the personal property in another state, or country, he must obtain ancillary letters testamentary, or of administration, where the suit is intended to be brought.

The courts of this state, however, appear to have considered the probate of the will, or the grant of letters testamentary or of administration, in the proper tribunal of the decedent's domicil, as sufficient to authorize the executor or administrator to take charge of the property here, or to re-

ceive debts due to the decedent in this state, where there is no conflicting grant here, and when it can be done without suit. In the case of *Doolittle* v. *Lewis*, (7 *John. Ch.* 49,) one of my learned predecessors expressed a pretty decided opinion that the executor, or administrator, of a creditor dying in another state, and becoming lawfully possessed of a bond, as a part of his assets, given and secured upon lands in this state, was competent to receive payment, and to give an acquittance for the debt, without first resorting to the probate court here. So in a subsequent case, (*Shultz* v. *Pulver*, 3 *Paige*, 182,) this court thought the executor, or administrator, of a decedent who was domiciled here, was bound to use due diligence, to collect securities, which had come to his hands, against a debtor who resided in another state. That decision was affirmed upon appeal to the court of dernier resort. (11 *Wend. Rep.* 361.) And in the case of *Trecothic* v. *Austin*, (4 *Mason's Rep.* 33,) Judge Story, in speaking of payments voluntarily made by debtors residing in this country to an administrator appointed in England, upon the estate of a person domiciled there, says, such payments voluntarily made to a foreign administrator would now be held effectual in our courts, upon principles of national comity. If a third person, therefore, had taken out administration in this state, after the accord and satisfaction and the release of the equity to charge this debt upon the lands here, by the administratrix appointed in the place of the decedent's domicil, I am inclined to think that a court of equity ought not to have interfered to declare the compromise void, when there were no creditors here having an interest in the question ; though I admit the adoption of such a principle is not without its difficulties.

I prefer, however, to put my decision sustaining the decree of the assistant vice chancellor, upon an entirely different ground. Here the New-Jersey administratrix, who received the $300 and executed the release, is the same person who afterwards obtained administration in this state, and now files this bill to avoid her own deliberate act. This I think a court of equity ought not to permit her to

do, even if that act was unauthorized ; especially after waiting until she found that the case had been decided in favor of the estate of her deceased husband, upon the appeal. The grant of administration has relation to the death of the intestate, and it legalizes all intermediate acts of the administrator. (*Vaughan* v. *Brown, Andrews' Rep.* 333. *Curtis* v. *Vernon,* 3 *Durn. & East,* 590.) Thus where the administrator, before he had taken out letters of administration upon the estate of the intestate, delivered a horse to another for his expenses in burying the decedent, and afterwards brought trover for the horse, it was decided, by a majority of the judges of the court of king's bench, that the action could not be maintained. For, say they, it is directly against his own agreement and contract, and the plaintiff himself is a particeps criminis if any thing is done amiss ; and it is not reasonable that he should be allowed to bring his action against the defendant for doing a thing to which he not only consented but jointly acted therein with the defendant. (*Whitehall* v. *Squire, Holt's Rep.* 45 ; *Carth. Rep.* 103, *S. C.*) So in *Witt* v. *Elmore,* (2 *Bail. L. R.* 595,) O'Neill, J., in delivering the opinion of the court of appeals in South Carolina, says, " I have no doubt but that administration granted to an executor *de son tort* will, by relation, cure his tortious acts. But that cannot avail the defendant here ; for the effect of the rule is to legalize the acts, done as executor *de son tort,* both for and against him." And in a more recent case in the same court, where a recovery was had against a person who had intermeddled with the property of the decedent, as executor *de son tort,* and such person was afterwards appointed administrator, by the proper tribunal, it was held that the judgment was a valid claim against the estate in his hands as administrator ; that the administrator himself was estopped from denying the validity of the judgment as a charge upon the estate ; and that he represented all creditors and distributees, and they were bound by his acts, unless in case of fraud or collusion. (*Walker* v. *May,* 2 *Hill's Ch. Rep.* 23.)

In the case now under consideration, I think the grant of

administration to the complainant, in this state, had relation back to the time of the death of her husband. And as the accord and satisfaction and release were obtained in good faith, she should be estopped from insisting that, at the time she received the $300 and executed the release of the equity of redemption in the mortgaged premises, she had no right to receive the money and execute such release. The decree appealed from must therefore be affirmed with costs.