Bellinger v. Ford.

———————◆———————

BELLINGER *vs.* FORD.

21 311
88h 225

Where an order was made by a county court, granting leave to a plaintiff to issue an execution upon a judgment, notwithstanding the lapse of five years from the entry thereof, the plaintiff having been dead for over two years at the time of making such order, and the affidavit on which the order was obtained, the notice of motion, and the order itself, were entitled in the action, and the notice was signed " C. B.,W. att'y for the plff;" *Held*, that the order was void, and the execution issued in pursuance of it, so far as its validity depended on the order.

*Held also*, that for being issued after five years without an order, the execution would not be absolutely void, but only voidable. But that it was void unless authorized by the order, for the reason that the plaintiff in the judgment was dead.

Bellinger *v.* Ford.

Until a suit, abated by the death of the plaintiff, has been revived, no execution can issue; no one having a right to issue it.

Although it has been held that letters testamentary, when issued, relate back to the death of the testator, and legalize all intermediate acts of the executor, yet this must be understood to cover only those acts which might have been done, had he been executor at the time.

The doctrine of relation will not protect an executor in suing out an execution against a debtor of the testator, and selling property thereunder, prior to his receiving letters testamentary.

The rule which legalizes, by relation, the acts of a person afterwards appointed executor or administrator, applies only to those cases where money is obtained without any coercive proceedings, and where the property of the estate has been wrongfully appropriated, and not to illegal coercive acts against third persons and their property.

THE plaintiff brought his action in a justice's court, and claimed to recover the value of a colt, sold by one Smith Low, in February, 1850. The defendant, first, denied the complaint; and secondly, set up as a justification, that the colt was the property of Adam P. Bellinger; and that Low, as undersheriff, sold it on an execution against him. On the trial the sale by Low was proved; and to charge the defendant with authorizing and directing the sale, the plaintiff called the defendant's clerk, who testified that he attended the sale by the defendant's direction, and was authorized by him to give what the property was worth; that he received some money from the sheriff; entered it on the defendant's cash book; put it in with other moneys belonging to the plaintiff, but did not know as the defendant received it or knew it was there.

The defendant proved the recovery of a judgment before a justice of the peace, in favor of Anastatia Ford against Adam P. Bellinger, for $69.48, on the 29th of December, 1843; that a transcript thereof was filed and judgment thereon docketed in the county clerk's office, on the 17th of April, 1844; that on an affidavit made by the defendant in this action a motion was made to the county court for liberty to issue execution on the judgment notwithstanding the lapse of five years from the entry thereof, which motion was granted, by an order dated January 8, 1850; that the county clerk thereupon issued an execution, under which the sheriff sold the colt. The affidavit,

notice of motion, and order, were entitled respectively as follows: "*St. Law. Co. Court, Anastatia Ford agst. Adam P. Bellinger.*" The notice was signed "*C. B. Wright, att'y for plff.*" The defendant offered in evidence letters testamentary duly granted to him, as executor of the estate of Anastatia Ford, who, it appeared, died in 1847 or 1848, which letters were granted November 4, 1853. The plaintiff objected to the introduction of the letters, and the court sustained the objection. Pertinent proof was given, tending to show that the colt was the property of Adam P. Bellinger; so that if the execution was a valid process in the hands of the officer, it would then have been a fair question for the jury to determine, under all the evidence, whether the colt did not in fact belong to Adam P. Bellinger, the defendant in the execution.

The jury found a verdict for the plaintiff; whereupon judgment was entered against the defendant. On appeal, the county court reversed the judgment, and the plaintiff appealed to this court.

*B. H. Vary,* for the appellant.

*George Morris,* for the respondent.

*By the Court,* BOCKES, J. This case presents an interesting subject for examination—hinted at in *Bellinger* v. *Ford,* (14 *Barb.* 250.) The question is whether the execution sale was justified in law, conceding that the defendant procured the execution to be issued, and directed the sale.

When the order for leave to issue the execution was granted and the execution issued, the plaintiff in the judgment, Anastatia Ford, had been dead for over two years, and no executor or administrator had been appointed to her estate. There was then no one authorized to issue execution, or to take any proceedings whatever on the judgment; nor do the papers show that any person, except those assuming to act in behalf of the deceased plaintiff, directed the proceedings. The affidavit on which the order was obtained, the notice of motion and the

order itself, were entitled "St. Law. Co. Court, Anastatia Ford vs. Adam P. Bellinger," and the notice was signed "C. B. Wright, att'y for plff." There was no suggestion in the papers or on the record, of the plaintiff's decease; but all the proceedings were in her name, and purported to be on her authority. Mr. Wright had no retainer from the plaintiff in the judgment; consequently no authority to act as her attorney; indeed a deceased person could have no attorney. The notice of motion signed by him had no effect, and must be regarded as if unsigned by any one. It imposed on the defendant no obligation to appear and answer the motion. The order therefore was void, and the execution also, if its validity depended on the order. The execution would not be absolutely void—only voidable—because issued after five years without an order. But it was void unless authorized by the order, for the reason that the plaintiff in the judgment was dead. Until the suit should be revived—which formerly was done by *scire facias*, now the same result is attained by motion—no execution could issue. Until then no one had any right to issue it. Besides, the plaintiff being dead, the judgment stood between new parties, who must have a day in court before excution could issue. The execution was therefore absolutely void, and of course could afford no protection to Mr. Ford, not even if he is to be regarded as executor at the time, by relation.

But the doctrine of relation would not protect Mr. Ford in suing out an execution against a debtor of the testatrix, and selling property thereunder, prior to his receiving letters testamentary. It has been repeatedly decided that letters testamentary, when issued, relate back to the death of the testator, and legalize all intermediate acts of the executor. (*Rattoon* v. *Overacker*, 8 *John*. 126. *Vroom* v. *Van Horne*, 10 *Paige*, 549. *Priest* v. *Watkins*, 2 *Hill*, 225. *Matter of Faulkner*, 7 *Hill*, 181.) But this must be understood to cover those acts only which might have been done had he been executor at the time; and since the revised statutes, the law of relation is limited still more in its application.

Some of the cases—and there are many beside those cited—

proceed on the ground of estoppel ; that an executor or administrator shall not be allowed to gainsay his own solemn acts. Some cover other or broader ground, holding that the doctrine of relation legalizes the acts done as executor *de son tort*, both for and against him. In these cases his letters testamentary become his shield and protection. All the cases, however, which have fallen under my observation, were cases where the executor or administrator had received or collected moneys belonging to the estate voluntarily paid to him, or where he had wrongfully taken possession of and converted to his own use, property belonging to the estate of the testator or intestate before administration was granted to him. As to all such acts he stands the same, after receiving letters, as if he had been executor or administrator at the time. Such was the rule of the common law, and this doctrine of relation has not been changed by the statute, as to the legalizing of payments made to the executor or administrator before letters were granted ; (*Priest* v. *Watkins, supra ;*) nor in regard to certain other acts, to wit, the giving of a release before the administration granted. ( *Vroom* v. *Van Horne, supra.*) But in *Thomas* v. *Cameron*, (16 *Wend.* 579,) it was decided that an executor before letters testamentary granted to him, could not commence an action ; and it is urged that by analogy the defendant in this cause had no power to sue out execution against the plaintiff.

It was held at common law, that inasmuch as the executor derived his authority from the will, and was entitled to the possession of the whole of the personal estate of the testator immediately upon his death, the actual probate of the will was only necessary to enable the executor to obtain the property by suit. He might therefore commence an action before probate, and it was enough if he should obtain letters testamentary before declaring. That would render the commencement of the suit good by relation. But the statute has taken away the common law right to sue before probate. ( *Thomas* v. *Cameron*, 16 *Wend.* 581.) It is provided by statute that " no executor named in a will shall, before letters testamentary are granted, have any power to dispose of any part of the estate of the tes-

tator, except to pay funeral charges, nor to interfere with such estate in any manner, further than is necessary for its preservation." (2 *R. S.* 71, § 16.)   Mr. Justice Bronson, in *Thomas* v. *Cameron*, remarks that the right to interfere for the purpose of preserving the estate, would not authorize suits to recover debts due to the testator; that if not executor at the time the suit is commenced, letters subsequently obtained would not aid him by relation; that if not executor he has no cause of action.   It is not a mere temporary disability in the plaintiff to sue, but until probate he has no title.   This is the view also taken by the chancellor in *Vroom* v. *Van Horne.* It would seem therefore, that the rule which legalizes by relation the acts of a person afterwards appointed executor or administrator, has application only to those cases where money is obtained without any coercive proceedings, and where the property of the estate shall have been wrongfully appropriated, and not to illegal coercive acts against third persons and their property. The statute declares that until letters are granted to the person named as executor in the will, he shall not have any *power* to interfere with the estate, in any manner, further than is necessary for its preservation.   If suits are necessary before granting letters for its preservation, a collector may be appointed, who may maintain them.   (2 *R. S.* 71, §§ 38–40.)   At the time the execution was issued and the levy and sale were made, the defendant was not executor, nor had he *power*, (see statute above cited,) to interfere with the estate of Anastatia Ford, except for its preservation.   He then had no right to sue; ·(*Thomas* v. *Cameron, supra ;*) and by analogy no right to ask .for or use the process of the people to coerce the payment of debts due the estate.   He was then an officious intermeddler with the plaintiff's property, without right or authority.   And if the rule laid down in *Thomas* v. *Cameron* is good law, the fact that letters testamentary were subsquently granted to him will not shield him from liability.   It was said in the case last cited, that if not executor at the time the suit is commenced, letters thereafter obtained would not aid him by relation; and for the reason that he could have no cause of action, until pro-

bate, he would have no title. So here, not having any right to receive or protect, he became a usurper in his use of the people's writ, and the doctrine of relation cannot aid him.

Judgment of the county court reversed, and that of the justice affirmed.

[SARATOGA GENERAL TERM, January 1, 1856. *C. L. Allen, Bockes* and *James* Justices.]