WALTER S. GLIDDEN ET AL., Receivers of
Lincoln County Trust Company

*vs.*

RICHARD T. RINES.

Lincoln.    Opinion March 9, 1925.

*A receiver appointed by the court to receive and preserve property or funds, is a ministerial officer of the court.    He represents the court, acts under its direction, and his possession of the property or funds in litigation is the possession of the court.    He has the power or right of possession of the property or funds, and nothing more.    He takes no title thereto, and as to any act of his regarding the property or funds, the authority to so act must come from the court.    Without that authority no act of his is valid.*

To hold that a receiver, by his unauthorized act, might jeopardize the value or character of the assets in his possession would not only be a legal irregularity, but might open a door to fraud.

To hold that a receiver, even though acting in good faith, but through a mistaken idea as to his power, may not by the most expeditious legal action rectify his error and restore to the possession of the court any property or assets improperly conveyed or disposed of, would be contrary to all sense of legal authority or common justice.

On exceptions.    At the time the plaintiffs were appointed receivers of Lincoln County Trust Company, the defendant had a checking

account in the bank of $487.74, and also was indebted to the bank on his note secured by a mortgage in the amount of $800. The receivers allowed the defendant a set-off of the amount of his deposit in the checking account and discharged the note and mortgage upon payment of the balance of $312.26. The note and mortgage were among the segregated assets of the bank. This action was brought to repossess the receivers of the amount allowed in the set-off, on the ground that the receivers had exceeded their authority in permitting such set-off. At the conclusion of the testimony before a jury, by agreement, the case was withdrawn by the court and it went to the Law Court on exceptions to the ruling of the presiding Justice in directing a nonsuit. The ruling directing a nonsuit was based upon the ground that an action could not be maintained until it was determined in final liquidation what dividend the defendant was entitled to, if any, on his checking deposit, which dividend, if any, should be credited on the amount allowed in set-off and the balance recovered. Exceptions sustained.

The case appears in the opinion.

*Walter S. Glidden,* for the plaintiffs.

*Frank A. Morey,* for defendant.

SITTING: CORNISH, C. J., PHILBROOK, DUNN, WILSON, DEASY, JJ.

PHILBROOK, J. This is an action of assumpsit in which the plaintiffs, as receivers, seek to recover from the defendant the sum of four hundred eighty-seven dollars and seventy-four cents ·($487.74) upon the common count for money had and received, with a specification of claim "that the defendant was indebted to said Lincoln County Trust Company in the sum of $800.00 upon his promissory note for said amount, dated October 29, 1915, payable in one year from the date thereof, with interest at the rate of six per cent. per annum, which note was then secured by a mortgage of certain real estate, given by the defendant to said Lincoln County Trust Company on the same day. Interest on said note was paid by the defendant from time to time up to April 29, 1923. On May 3, 1923, the defendant being then indebted to said Lincoln County Trust Company in the sum of $800.00, being the face of said note, effected a settlement of his liability to said bank on said note with one Wesley C. Day, who was then and there one of the receivers of said Lincoln County

Trust Company. The defendant on said May 3, 1923, was a depositor in said Lincoln County Trust Company, and had standing to his credit on his checking account as a demand deposit in the commercial branch of department of said Trust Company, a balance of $487.74; and the said Wesley C. Day, as receiver aforesaid, then and there allowed and permitted the defendant to take credit by way of off-set against the amount due from him to said bank for said sum of $487.74, and then and there cancelled said note and discharged said mortgage, whereby, and by reason whereof the said defendant received the sum of $487.74, to which by law he had no right or title, and has never repaid the same, but now holds the same for the plaintiffs' use."

Prior to the institution of this action the receivers made application to this court for instructions as to claims of set-off made by depositors, and it was held that the loans secured by mortgages of real estate had been legally segregated as security for the savings depositors and denied the right of set-off as previously allowed by the receivers to the defendant. *Lawrence* v. *Lincoln County Trust Company*, 123 Maine, 273. The suit at bar was then begun.

The case was opened to a jury but at the conclusion of the testimony, by agreement, it was withdrawn from those arbiters and was taken under advisement by the presiding Justice who rendered his decision in vacation pursuant to the provisions of R. S., Chap. 87, Sec. 37. The magistrate found that the receivers and the defendant had acted in good faith when they settled the question of set-off, as already stated, but ordered a nonsuit, and the plaintiffs bring the case to this court on exceptions to that order. This is the only issue technically raised by the bill of exceptions. In their brief plaintiffs say "we will also discuss all the issues in the case with a hope that the court will so decide the whole question as to give the plaintiffs, who are its officers, proper guidance for their proceedings." This we must decline to do since an opinion expressed by a court upon an issue not necessarily involved in the case lacks the force of an adjudication, it is merely obiter dictum. *American Surety Company* v. *United States*, 239 Fed., 680. *Words & Phrases*, Vol. 3, Page 2051.

The facts are not in dispute. The issue raised is a legal one. The reasons upon which the sitting Justice based his order of nonsuit are found in the following language.

"It is undoubtedly true that in the equitable distribution of the assets all creditors of the same class are to be treated alike and are

entitled to payment proportionately, and that the transaction in question was in effect a payment in full of Mr. Rines' commercial deposit. But the defendant is entitled to the same dividend which other creditors receive, and the plaintiffs at most can only be entitled to recover the difference between the amount paid and the percentage or dividend which Mr. Rines would have received if his account had been proved and dividends paid thereon in due course of liquidation. What the difference is does not appear and cannot be shown until the liquidation is completed. The segregated assets are held as security for the savings deposits; they are supposed to be carried on the books of the bank at their true value. R. S., Chap. 52, Sec. 90. Any excess above the amount required to pay the savings depositors will be available for payment of other creditors; in addition there will be the non-segregated assets and the stockholder's liability so available. . . . . The case presents a matter for accounting by the receivers. They cannot recover back the whole amount so paid and received in good faith but only the overpayment. The burden is upon the receivers to show what the difference is; it is incumbent upon them, at their peril, to have the dividend upon the creditor's claim determined. This is no great hardship upon the receivers who seek to be relieved from their own mistake. The receivers paying may prove any claim so paid in their own names, being subrogated to the rights of the creditor whose claim has been fully paid. The authorities in the analogous cases of overpayments made by administrators of insolvent estates are in point. *Morris* v. *Porter*, 87 Maine, 510, 516; *Gillen* v. *Sawyer*, 93 Maine, 151, 166. Inasmuch as plaintiffs have not shown the amount of the overpayment this action cannot be maintained."

Briefly stated, without deciding other questions of law as a reason for ordering a nonsuit, if any such exist, the sole reason for the order is that the action was prematurely brought. This, therefore, as we have already suggested, is the only issue of law to be determined in the instant case. As counsel have addressed their arguments to legal points other than the one thus prevailing in the order of nonsuit, we receive slight assistance from their briefs.

In view of the fact that the learned Justice in the court below referred to certain cases, as analogous to this, wherein the rights, duties and liabilities of executors and administrators are concerned,

we deem it important to call attention to the wide differences existing between the character, powers, duties and liabilities of such trust officers and those of receivers appointed as in this case.

In a somewhat early case, *Hathorn* v. *Eaton*, 70 Maine, 219, our court held that an executor derives all his title from the will, his interest being completely vested at the instant of the testator's death, and he may, therefore, before probate, perform almost any act belonging to his office. In a later case, *Chadwick* v. *Stilphen*, 105 Maine, 242, the rule is given in more restricted language, holding it to be a well-settled rule in this State that the power of an executor to act in the settlement of the estate of a testator is not derived solely from his nomination in the will; that his authority is not complete until there has been a compliance with all the prerequisites of R. S., Chap. 68, Sec. 8. It should not be overlooked that in some jurisdictions, contrary to the doctrine of the common law the executor derives his power and authority over the property of his decedent from the laws of the state, and not from the will itself. *Baker* v. *Cauthorn*, 23 Indiana Appeals, 611; 77 A. S. R., 443; *Calloway* v. *Doe*, 1 Blackf., 371; *Lucas* v. *Tucker*, 17 Ind., 41. In the case of an administrator the rule is different from that of an executor, it being the generally accepted view that the administrator derives his powers from his appointment by a proper tribunal and that the office is solely the creature of the statute. *Vroom* v. *Van Horne*, 10 Paige, 549, (N. Y.); 42 Am. Dec., 94; *Mount* v. *Brown*, 33 Miss., 566; 69 Am. Dec., 362; *Boyd* v. *Blankham*, 29 Cal., 19; 87 Am. Dec., 146. Although executors and administrators are not public officers, within the commonly accepted meaning of that term, yet both have been deemed to be officers appointed to settle decedents' estates, and therefore that an administrator or executor represents the deceased. *N. O. & C. R. R. Co.* v. *Kerr*, 9 Robinson, (La.), 122; 41 Am. Dec., 323; *Walsh* v. *Packard*, 165 Mass., 189; 52 Am. St. Rep., 508; *Bailey* v. *Dilworth*, 19 Smedes & Marshall, (Miss.), 404; 48 Am. Dec., 760. The language of the court in the latter case seems worthy of quotation as bearing upon the powers, duties and liabilities of an executor. "An executor or administrator represents the deceased. . . . They may compound debts, or enter into arbitrations, and these acts will be upheld, if they are fair, beneficial to the estate, and free from fraud, negligence, or misconduct. . . . . It hence results, that

if they collect debts in bank paper not strictly at par, when the best interests of the estate require it, and where nothing better can be done, their conduct will be sustained."

On the other hand a receiver is a person, indifferent between the parties to a cause, appointed by the court to receive and preserve property or funds, and is a ministerial officer of the court or, as he is sometimes called, the hand or arm of the court. He represents the court, acts under its direction, and his possession of the property or funds in litigation is the possession of the court. His authority is derived solely from the act of the court appointing him and he is subject to its order only. In *Farmer's Loan Co.* v. *Oregon Pac. R. R. Co.*, 31 Oregon, 237; 65 A. S. R., 822, the court holds that a receiver is the agent and executive officer of the court, which, by virtue of its high prerogative powers, lays its judicial hand upon the property which is the subject of controversy and controls and operates it for the use and benefit, not of either of the parties to the litigation, but for the public and whomsoever in the end it may concern. His acts and possession are the acts and possession of the court. His contracts and liabilities, in contemplation of law, are the contracts and liabilities of the court. The parties to the litigation have not the least authority over him, nor have they any right to determine what liabilities he may or may not incur. His authority is derived solely from the act of the court appointing him and he is the subject of its order only. In *Union National Bank* v. *Bank of Kansas City*, 136 U. S., 223; it is said that a receiver derives his authority from the act of the court appointing him, and not from the act of the parties at whose suggestion or by whose consent he is appointed,—the utmost effect of his appointment is to put the property from that time into his custody as an officer of the court, for the benefit of the party ultimately proved to be entitled, but not to change the title, or even the right of possession in the property.

We feel compelled to hold that the character, powers, duties and liabilities of receivers are so widely different from those of executors and administrators, that the analogy suggested by the learned Justice in the court below does not obtain, and that the authorities cited by him in his findings are not clearly applicable.

R. S., Chap. 52, Sec. 86 gives to the bank commissioner the same authority over trust and banking companies incorporated under the laws of this state (the Lincoln County Trust Company was so

incorporated) that he has over savings banks. Under the authority given by R. S., Chap. 52, Sec. 54, receivers were appointed on his bill for this trust company. They were "to take possession of its prop-erty and effects, subject to such rules and orders as are from time to time prescribed by the Supreme Judicial Court, or by any Justice thereof in vacation." This decree of sequestration confers upon the receivers the power or right of possession and nothing more. They are officers of the court, subject to its rules and orders, and even their possession is the possession by the court. They take no title to the property or assets of the trust company, and, as to any act, they receive their authority so to do solely from the court. Without that authority, given originally, or by subsequent ratification, no act of theirs is valid. To hold that a receiver might, by his unauthorized act, jeopardize the value or character of the assets in his possession, would not only be a legal irregularity but might open a door to fraud. To further hold that a receiver, even though acting in good faith, but through a mistaken idea as to his power, may not by the most expeditious legal action, rectify his error and restore to the courts possession any property or assets improperly conveyed or disposed of, would be contrary to all sense of legal authority or common Justice. Indeed the statutory provisions of his appointment impliedly require him to do so. In the case at bar the receivers are seeking to rectify their legal error with promptitude, and before the assets which they improperly allowed to pass from their possession might, through bankruptcy of the person to whom assets were con-veyed, or any other cause, become irrecoverable, and it is the opinion of the court that they were not acting prematurely.

*Exceptions sustained.*