WILLIAM H. STONE, Administrator, &c., Appellant, *v.* JOHN H. SCRIPTURE and MARGARET his wife, Respondents.

(GENERAL TERM, THIRD DEPARTMENT, NOVEMBER, 1870.)

The *authority of* an administrator, appointed in this State, upon the goods, &c., of a deceased non-resident, to receive and satisfy the debts due here, is exclusive of that of any foreign executor or administrator.

A debtor upon bond and mortgage residing in St. Lawrence county, where the mortgaged land also lay, notwithstanding an administrator had duly qualified here upon the estate of the deceased non-resident mortgagee, paid the amount due to a foreign administrator appointed at the intestate's place of residence, but whose authority as administrator was subsequent to that of the domestic administrator.—*Held,* that the satisfaction of the mortgage by the foreign administrator was no defence to an action by the domestic administrator to foreclose the mortgage.

Nor was it material that the foreign administrator, before qualifying as such, had received payments upon the bond and mortgage, or that the bond and mortgage were at the domicil of the intestate at his decease.

THIS is an appeal from a judgment in favor of defendants entered on the report of a referee, in an action to foreclose a mortgage given by defendants to plaintiffs' intestate.

The following facts appeared on the trial:   That on the 18th of November, 1852, John H. Scripture gave his bond to Zimri Stone, conditioned for the payment of $300 in five years, with interest annually, no place of payment being named; that to secure said payment, defendants, on the same day, executed a mortgage on their farm in Oswegatchie, St. Lawrence county, New York, to said Zimri Stone on like condition, which mortgage was duly recorded; that at the date of said bond and mortgage said Zimri Stone resided at New Ipswich, N. H., and continued to reside there until his death, March 20th, 1859; that from the date of said bond and mort-

Stone *v.* Scripture.

gage until the present time defendants have resided in Oswegatchie, St. Lawrence county, N. Y.; that Zimri Stone left surviving him three brothers, viz.: William H. and Silas, residing in St. Lawrence county, N. Y., and Nathan, residing in New Ipswich, N. H.; that on the 4th day of January, 1869, said William H. Stone was appointed administrator of Zimri by the surrogate of St. Lawrence county; that the bond and mortgage were in possession of Zimri, at New Ipswich, N. H., at the time of his death, but were in possession of Silas Stone, in St. Lawrence county, in 1863, when he surrendered the same to Scripture; that this action was commenced May 8th, 1869; that Nathan Stone, without letters of administration, undertook to administer on the effects of Zimri, and Silas assisted him; that Silas received from Scripture the interest on the mortgage and $200 of the principal prior to Zimri's death, and sent it to Nathan; and in 1863, after Zimri's death, received the balance, which he also sent to Nathan, before any letters of administration were issued; that on the 13th day of January, 1869 (after plaintiff's appointment), Nathan Stone was appointed administrator of Zimri by the probate judge of the county of Hillsborough, N. H., where New Ipswich is situated; that on the 11th of February, 1869, Nathan Stone, as administrator of Zimri, gave a satisfaction of said mortgage, which was recorded in St. Lawrence county, March 2d, 1869.

The referee reported in favor of the defendants, with costs to each party, to be paid by the estate. The plaintiffs duly excepted to the referee's report.

A judgment was entered in favor of the defendants upon the referee's report, and the plaintiffs appealed to the General Term of the Supreme Court.

*Edward C. James*, for the appellants.

*Bennett H. Vary*, for the respondents.

Present — MILLER, P. J., PARKER and JAMES, JJ.

By the Court — MILLER, P. J.   The plaintiff in this action as the administrator of the intestate, was lawfully entitled to a judgment of foreclosure against the defendants, unless the administrator appointed in New Hampshire, where the deceased resided at the time of his death, was authorized to execute a satisfaction piece of the mortgage in question.  The appointment of an administrator in New Hampshire was made subsequent, in point of time, to that of the plaintiff, and the question to be determined is whether, under such circumstances, the foreign administrator had a right to receive payment and cancel the mortgage as against the plaintiff. The referee has found that either of the administrators had a right to receive payment, and that voluntary payments to either discharged the debt.

Personal property has no locality, and, for the purposes of the succession, must be regarded as subject to the law which governs the person of the owner while living.   When, therefore, a resident of one State owns property in a foreign State, upon his decease, its distribution must be governed by the laws of the locality where the deceased was domiciled.   It is, however, well settled in this State that an executor or administrator, appointed in another State, has not, as such, any authority beyond the sovereignty, by virtue of whose laws he was appointed.  (*Parsons* v. *Lyman*, 20 N. Y., 103.)   The cases bearing upon the subject are here referred to and reviewed, and the learned judge who wrote the opinion remarks, after an examination of the authorities : " In *Vroom* v. *Van Horne* (10 Paige, 549), Chancellor WALWORTH stated that the result of the cases in this State seemed to be that a foreign executor or administrator, appointed by the proper tribunal of the deceased's domicil, was authorized to take charge of the property here and to receive debts due to the deceased in this State, *where there was no conflicting grant of letters* here, and where it could be done without suit."   This principle authorizes an executor or administrator, appointed by a foreign State, to receive debts, and in the absence of any grant of letters in this State he would have a right to receive the

amount due on a bond and mortgage, and perhaps to execute a proper discharge of the same, but the authorities do not go beyond this; and where an administrator is duly qualified within the State, as I understand, he supersedes the foreign administrator, and the latter has no power to act.

The authorities which are relied on by the defendant's counsel do not go to the extent of holding that a foreign administrator or executor has the power to act in conflict with letters issued in this State to another administrator, nor do they in any way interfere with the doctrine laid down in *Parsons* v. *Lyman* (*supra*), which is also cited to sustain the views of the defendant. A brief recurrence to the cases will not be out of place.

In *Doolittle* v. *Lewis* (7 John. Ch. R., 45), the action was brought to recover premises sold under a mortgage upon lands given to secure a debt due to the mortgagee, residing in another State, which contained a power to the mortgagee, his executors, &c., in case of default of payment, to sell and convey the premises according to the laws of this State, and it was held that this being a special power given by the mortgagor, and not derived from the court of another State, might be lawfully executed in this State by the executor or administrator of the mortgagee, appointed by the Court of Probate of another State, where the mortgagor died, and that the power and the exercise of it was a matter of private contract between the parties and not of jurisdiction. In this case there was no conflicting grant of letters and no question raised as to the rights or authority of a duly constituted executor or administrator, appointed according to the laws of this State. It is not, therefore, an authority for the doctrine that a foreign administrator can act as against one who has taken out letters within the State where the debt exists and the debtor resides. *Averill* v. *Taylor* (5 How., 476), a Special Term decision, is based entirely upon the authority of *Doolittle* v. *Lewis* (*supra*), in holding that foreign executors may foreclose a mortgage in this State without taking out letters testamentary.

Stone *v.* Scripture.

In *Williams* v. *Storrs* (6 Johns. Ch., 353), it was held that an administrator of an intestate's estate, whose letters of administration were granted out of the State, has no legal authority over the intestate's effects within this State ; and it was said by the chancellor that the order of the administrator in Connecticut for the payment of money was not binding and could not have been enforced here, and the defendant was not under any obligation in law to obey it, though he apprehended a voluntary payment under it would have protected him.    The opinion of the chancellor, that a voluntary payment by a debtor here to a Connecticut administrator would be good, as well as a similar *dictum* in *Doolittle* v. *Lewis* (*supra*), were considered as *obiter* in *Parsons* v. *Lyman* (20 N. Y., 114), in the opinion of the court.

In *Petersen* v. *The Chemical Bank* (29 How., 240 ; 32 N. Y., 21), it was held that the purchaser from a foreign executor or administrator of a money demand, due to the testator or intestate, from a resident of this State, may maintain his action in our courts for the collection of such demand, and that the disability of the foreign executor to sue in our courts does not attach to the subject of the action, but to the person of the plaintiff.    No question is made in this case as to the right of a foreign administrator to assign a demand, or as to the rights of foreign administrators and executors as against those who are qualified to act by the laws of the State.

*Wilkins* v. *Ellett, Adm.* (9 Wall., 740) simply holds, as I understand, that the voluntary payment of a debt to a foreign administrator is good as against the claim of an administrator afterwards appointed at the domicil of the debtor, there having been no creditor of the intestate in the State of the debtor's domicil, nor any persons there entitled as distributees.

In all the cases cited on behalf of the defendants, except the last one, no administrator had been appointed within the State, and there were no conflicting claims.    In the last case, the payment was made to the foreign administrator before the appointment of one within the State of the debtor's domicil.

There is nothing in the cases referred to which is in conflict with the principle established and laid down by Chancellor WALWORTH, and approvingly stated in *Parsons* v. *Lyman.* If there are no letters of administration granted in the State, then the foreign executor or administrator may receive payment of the demand; but, if an administrator has been appointed, his authority is paramount and controlling, and he is entitled to collect and receive the demand.

In *Chapman, Admx.,* v. *Fish* (6 Hill, 554) it was held that the release of a debt by a Mississippi administrator was no defence to a suit brought by a New York administrator, appointed where the creditor resided. It was said by the court, that, though the intestate died in Mississippi, "this simple contract debt would be *bona notabilia* in this State, where the debtor lives; and the release by the foreign administrator cannot affect the plaintiff's right to recover the money." There are numerous adjudications in other States which tend to uphold the position laid down in 20 N. Y., 103, which, I think, must be regarded as the settled law of this State. (See *Vaughan* v. *Barrett,* 5 Ver., 333; *Pond* v. *Makepeace,* 2 Metc., 114; *Cutter* v. *Davenport,* 1 Pick., 81; *Stevens* v. *Gaylord,* 11 Mass., 263; *Abbott* v. *Coburn,* 28 Ver., 663; see, also, Story on Conflict of Laws, 512–515.)

In support of the doctrine that the foreign administrator had no power to discharge the mortgage, we have been referred to the unreported case in the Court of Appeals decided in 1852 (*Disosway* v. *Carroll, Ex'r*), where it was held that an administrator, appointed in this State, on the estate of a person who was domiciled and died in another State, leaving a will, under which an executor duly qualified in the place of his domicil, has yet the legal title to *bona notabilia* existing in this State and collectible here, which the foreign executor cannot deprive him of, by any release to the debtor. This is directly in point, and would be conclusive on the question, if accurately stated in the note of the case which has been furnished, made by one of the judges who was a member of the court at the time of the decision.

The fact that the administrator appointed in New Hampshire had received money upon the mortgage before his appointment, does not alter the aspect of the case or legalize the act. In so doing, he acted without authority; and, even if the letters could be considered as relating back to the death of the intestate, they do not give authority to act as against a resident administrator, who is armed with the power conferred by the laws of the State.

Nor is there any force in the position that the mortgage, having been discharged by a person having the legal right to discharge it, the discharge is conclusive, unless impeached for fraud, illegality or mistake, which can only be done in an action brought for that purpose. The answer to this proposition is, that an administrator having been appointed in this State who was authorized to receive and discharge the mortgage, the foreign administrator had no lawful right to discharge it. He acted, in doing so, entirely without authority, and the law will not interpose to shield a party under such circumstances.

The fact that the bond and mortgage were in New Hampshire at the time of the intestate's death, does not necessarily constitute them assets there alone. It was the "debt" which constituted the assets which were "secured" by the bond and mortgage (3 R. S., 5th ed., 169, § 6, subd. 8), and not the bond and mortgage itself, which was the evidence of it. The debt existed in this State; the land was here on which the debt was secured; and there being no legal representative of the estate when the plaintiff was appointed, he was lawfully entitled to the evidences of the debt, as well as authorized to enforce its collection.

It is evident that the referee erred in the decision of this case; and, although we have power, in cases where it is evident that no possible state of proof applicable to the issues in the case will entitle the defendants to a judgment, to render a final judgment in favor of the plaintiff, without awarding a new trial, yet, peradventure in this case, it may be shown that the intestate received a portion of what defendants paid;

and as it may be shown, upon another trial, that some portion of the mortgage has been paid, I am inclined to think that the case should be sent back for a new trial.

The judgment must be reversed, and a new trial granted, with costs to abide the event.

Judgment reversed.