William Reynolds, adm'r v. Bernard McMullen et al.

*Probate law—Conflict of jurisdiction—Domicil—Foreign administrator cannot assign mortgage on Michigan land.*

1. The public administrator at St. Louis, Missouri, acting without the authority of a court, took possession of the personal assets of a resident bachelor who died there, leaving heirs in Michigan. Among the assets was a mortgage on Michigan land, which the administrator sold at considerable loss and which a subsequent holder released. An administrator previously appointed in Michigan proceeded, however, to foreclose the mortgage. *Held*, that even if the public administrator had had authority under the laws of Missouri to take possession of the assets, he had none to sell the mortgage.

2. While personal property accompanies the person of the owner and is to be disposed of on his death according to the law of his domicil, it may still be necessary to have distinct proceedings in administration if the property is in one jurisdiction and the domicil in another.

3. Proceedings by a foreign administrator under proper letters of administration cannot be attacked collaterally; but nothing can be presumed in favor of an administration that has not been judicially ordered.

4. Comity in the recognition of a foreign administrator is determinable by statute, or by usage as evidenced by judicial decisions.

5. A mortgage in Michigan is a conveyance (How. Stat. § 5689) and cannot be foreclosed under the power of sale until it is recorded (id. § 8948); and any assignment of it for the purpose of foreclosure must also be of record and so must be the assignor's authority. A foreign administrator cannot therefore assign a mortgage on Michigan land for the purpose of foreclosing it, nor can he discharge it; new letters must be taken out within the State before the mortgage can be foreclosed and the land sold.

6. Where a mortgage upon real property in Michigan belongs to a person who dies in another State and whose estate is in course of regular and valid administration under a local administrator in Michigan, no foreign administrator can sell the mortgage claim to strangers; the title thereto is in the local administrator for purposes of administration, and only he can sue on it or assign or discharge it of record.

Appeal from Gratiot.    (Hart, J.)    Oct. 24.—Jan. 14.

Foreclosure bill.    Defendants appeal.    Affirmed.

*Smith & Sessions* for complainant. A foreign public administrator cannot maintain an action in Michigan : *Goodwin v. Jones* 3 Mass. 514; *Stearns v. Burnham* 5 Me. 263; *Vickery v. Beir* 16 Mich. 50; *Sheldon v. Rice* 30 Mich. 296, 301; *Thayer v. Lane* Walk. Ch. 202; a debt by a citizen of one state to a person domiciled in another is an asset in the former: *McCarty v. Hall* 13 Mo. 480; *Thompson v. Wilson* 2 N. H. 291; *Sabin, Adm'r v. Gilman* 1 N. H. 193; *Young v. O'Neal* 3 Sneed 55; *Taylor v. Barron* 35 N. H. 494; *Vaughn v. Barret* 5 Vt. 333–7; *Bullock v. Rogers* 16 Vt. 294; *Abbott v. Coburn* 28 Vt. 663; *Willard v. Hammond* 21 N. H. 385; *Chapman, Adm'r v. Fish* 6 Hill 554; *Stone v. Scripture* 4 Lans. 186; *Slocum v. Sanford* 2 Conn. 533; *Holcomb v. Phelps* 16 Conn. 127, 135; *Upton v. Hubbard* 28 Conn. 274, 286; *Vaughn v. Northrop* 15 Pet. 1; *Noonan v. Bradley* 9 Wall. 405; *Kohler v. Knapp* 1 Bradf. Sur. 241; *Orcutt v. Orms* 3 Paige 465; *Owen v. Miller* 10 Ohio St. 136; Story's Confl. Laws §§ 514, 411, 529; *Wyman v. United States* 29 Alb. Law Jour. 194; assets are not to be transmitted from one state to another, so long as there are creditors unpaid in the former: Story's Confl. Laws (7th ed.) § 513; *Richards v. Dutch* 8 Mass. 506; *Stevens v. Gaylord* 11 Mass. 256; there is no privity between different administrations in different states, but each is sovereign within its own limits and none have any authority beyond the state where appointed : *Aspden v. Nixon* 4 How. 467; *Stacy v. Thrasher* 6 How. 44; *Mackey v. Coxe* 18 How. 100.

*Spaulding & Barker* for appellants. The place where a person lives and dies is taken to be his domicile until facts adduced establish the contrary : *In re Olson* 63 Ia. 145; where the St. Louis probate court has jurisdiction of the estates of deceased persons, its orders and judgments are valid till reversed and they are not subject to review collaterally : *Howard v. Moore* 2 Mich. 233; *Palmer v. Oakley* 2 Doug. (Mich.) 475; *Osman v. Traphagen* 23 Mich. 88; *Cook v. Stevenson* 30 Mich. 245; *Schnell v. Chicago* 38 Ill. 382; *Unknown heirs v. Baker, Adm'r* 23 Ill. 435; *Hobson v. Ewan* 62 Ill. 149; *Brackett v. Brackett* 61 Mo. 221; the error or irregularity of proceedings before the surrogate cannot be shown in a collateral action, but must be corrected on appeal: *Jackson v. Robinson* 4 Wend. 436; debts due on simple contract are considered as goods situated where the intestate dies: *Parsons v. Lyman* 20 N. Y. 112; Story on Confl. Laws §§ 376–383; *Eells v. Holder* 2 McCrary 622;

a purchaser from a public administrator is not bound to see that the sale is proper: *Sutherland v. Brush* 7 Johns. Ch. 17; he is protected whether the probate court did or did not properly exercise its jurisdiction: *Wight v. Wallbaum* 39 Ill. 565; *Hobson v. Ewan* 62 Ill. 155; *McNamara v. McNamara* 62 Ga. 200.

COOLEY, C. J. Some time in the year 1872 Warren A. Sherwood, who had previously been a citizen of Michigan, went to St. Louis, Mo., where he engaged in business. He was a bachelor, and took board at a hotel, and on March 27, 1876, died at the hotel intestate. He left a number of heirs at law, one of whom resided in New York, one in Minnesota, and all the others in Michigan. He left some land in Michigan and some debts, and he was owner at the time of his death of demands to the amount of upwards of $50,000 which were secured by mortgages on lands in Michigan. Among the mortgages was one given to secure a note made October 8, 1874, by William and Mary Lusk, for $1125 and interest, payable at St. Louis, Mo., or at such other place as Sherwood, to whom it was given, should elect in five years from date.

On the death of Sherwood Matrom D. Lewis claiming to act as public administrator for the city and county of St. Louis, took immediate possession of his personal assets, and claimed a right to administer upon them. The relatives of Sherwood were not present at the time, but the residence of those in Michigan was known, and Lewis immediately communicated with them by telegraph, and sent the body to them in compliance with their request. The relatives at once proceeded to have letters of administration taken out in Michigan, and Albert G. Russell, a brother-in-law of the deceased, was appointed administrator by the probate court for the county of Ionia on May 29, 1876, and duly qualified as such. After his appointment and qualification Russell called upon Lewis for the property belonging to the estate, but Lewis refused to surrender it, and persisted in his claim of the right to administer himself. In June, 1878, Lewis made public sale of the securities belong-

ing to the estate, and they were sold for the most part for merely nominal sums. The Lusk note and mortgage, which were perfectly good securities, sold better than most of the others, and were bid off by one Flanagan for eighty dollars. The purchasers were notified before sale was made that the right of Lewis to sell was disputed, and that Russell as administrator claimed the securities. Flanagan subsequently gave an assignment of the mortgage to one Barr, and Barr executed a discharge of it on receiving six hundred dollars or about one-half the amount due. The defendant McMullen has since become purchaser of the land, and claims to hold and own it discharged of the mortgage. Russell, the Michigan administrator, continued to act as such until September, 1878, when he died, and complainant was appointed and qualified as his successor. The present suit was then instituted, the purpose of which is to foreclose the Lusk mortgage. The defendants rely upon the proceedings by Lewis, the sale to Flanagan, and the subsequent assignment to and discharge by Barr. Decree was rendered in the court below in favor of complainant, and defendants appeal.

It is disputed by complainant that Sherwood at the time of his decease was domiciled in St. Louis, but on the evidence we are inclined to think that city must be deemed to have been his domicile, and we shall so assume throughout this opinion. The questions of importance in the case will then be: *First*, whether Lewis, as public administrator, had authority of law to take upon himself administration of Sherwood's estate; and if so, then *second*, whether under the circumstances he had power as such administrator to sell and assign the mortgage in suit. If either of these questions is answered in the negative, it will be fatal to the defense.

The office of public administrator is statutory in Missouri, and the statute contemplates action by him in the settlement of estates only in a few exceptional cases which are particularly specified. The statutory provision which was in force at the time of Sherwood's death was the following:

"It shall be the duty of the public administrator to take

into his charge and custody the estates of all deceased persons in his county in the following instances:

1. When a stranger dies intestate in the county, without relatives, or dies leaving a will and the executor named is absent or fails to qualify.

2. When persons die intestate without any known heirs.

3. When persons unknown die or are found .dead in the county.

4. When money, property, papers or other estate are left in a situation exposed to loss or damage, and no other person administers on the same.

5. When any estate of any person who dies intestate therein, or elsewhere, is left·in the county, liable to be injured, wasted or lost, when said intestate does not leave a known husband, widow or heir in this state.

6. When from any good cause said court shall order him to take possession of any estate to prevent its being injured, wasted, purloined or lost." Wagner's Stat. 1868, (ed. 1872) p. 122, § 8.

Unless the case was such as to fall within one of these six classes, it is not pretended that Lewis had any right to intermeddle as .public. administrator.

That Sherwood was not a stranger in St. Louis is conceded. He was well known there, and his name appeared in the directory as a business man of the city. His case did not therefore come .within the first subdivision of the section above recited, or within the third.

Sherwood did not die without known heirs. His heirs were well known, and Lewis himself communicated with them immediately. The case was therefore not within the second subdivision above recited.

If Lewis was justified in interfering at all, it must have been under the fourth or fifth subdivisions of the section, and for the protection of the estate. But the fourth could not justify him because the relatives of Sherwood immediately offered to take charge of the estate, and would have done so but for his interference. They did in fact as soon as was practicable take out letters of administration in Michigan where they were particularly needed, and would no doubt have done the same in Missouri had it become

necessary. If they had failed to do so, any creditor in Missouri whose claim was not provided for might have taken out letters on his own behalf. No showing is made in the case that for any purpose of protecting the estate it was necessary or important that the public administrator should interfere, and his seizure of the effects and papers of the deceased and the subsequent sale of the assets for a trifling percentage of their value constituted a wholly unnecessary and reckless intermeddling with private rights which the statute of Missouri never intended to authorize, and which the enlightened tribunals of that state must have visited with condemnation had their action been invoked to authorize or sanction what was done. If the public administrator could lawfully administer in defiance of the wishes of the family, he must have had the right in any case in which he could reach the bed of death and seize the personal effects before the family could anticipate him.

We keep in mind the fact, in what we say in this connection, that Lewis was acting on his own motion and without the previous authorization of any court. Had the proper probate court of Missouri, on being applied to, granted letters of administration on the estate of a person who had died when domiciled within the jurisdiction, a collateral attack upon its proceedings could not be countenanced. But this public officer acted without letters and was his own judge of the right to do so. Those who claim under an administration which is not judicially ordered are entitled to no presumptions in support of its authority. *Illinois Cent. R. R. Co. v. Cragin* 71 Ill. 177. In this case the failure to show jurisdiction is complete. There could not well be a more unnecessary, wanton and injurious interference with the rights of others than this record discloses. But we do not place our judgment in this case exclusively upon this ground, because we think if Lewis as public administrator had authority to act, he had none under the facts disclosed to make sale of the mortgage.

We concede to the fullest extent the general principle relied upon by defendants, that personal property, in contem-

plation of law accompanies the person of the owner, and that its disposition on his death is to be determined by the laws of his domicile. But while the rule of distribution is thus determined, the steps to reach it may be otherwise prescribed ; and when the property is in one jurisdiction and the domicile in another, the necessity for distinct proceedings in administration may be imperative. The proceedings when taken in this class of cases are governed and regulated by certain rules of inter-state comity, which are thus stated by the court of appeals of New York: " It is an established doctrine, not only of international law but of the municipal law of this country, that personal property has no locality. It is subject to the law which governs the person of the owner, as well in respect to the disposition of it by act inter vivos, as to its transmission by last will and testament, and by succession upon the owner dying intestate. The principle, no doubt, has its foundation in international comity ; but it is equally obligatory, as a rule of decision in the courts, as a legal rule of purely domestic origin. It does not belong to the judges to recognize or to deny the rights which individuals may claim under it, at their pleasure or caprice ; but, it having obtained the force of law by user and acquiescence, it belongs only to the political government of the state to change it whenever a change becomes desirable. But the right which an individual may claim to personal property in one country, under title from a person domiciled in another, can only be asserted by the legal instrumentalities which the institutions of the country where the claim is made have provided. The foreign law furnishes the rule of decision as to the validity of the title to the thing claimed ; but in respect to the legal assertion of that title it has no extra territorial force. As a result of this doctrine it is now generally held everywhere, and it is well settled in this state, that an executor or administrator appointed in another state has not, as such, any authority beyond the sovereignty by virtue of whose laws he was appointed." Denio, J. in *Parsons v. Lyman* 20 N. Y. 103, 112 ; citing *Morrell v. Dickey* 1 Johns. Ch. 153 ; *Vroom v. Van Horne* 10 Paige 549.

The same general doctrine is also concisely stated in a case in the Federal Supreme Court: " Every grant of administration is strictly confined in its authority and operation to the limits of the territory of the government which grants it; and does not, de jure, extend to other countries. It cannot confer, as a matter of right, any authority to collect assets of the deceased in any other state; and whatever operation is allowed to it beyond the original territory of the grant is a mere matter of comity, which every nation is at liberty to yield or to with_hold, according to its own policy and pleasure, with refer-ence to its own institutions and the interests of its own citi-zens." Story, J. in *Vaughan v. Northup* 15 Pet. 1, 5.

Lewis, then, if legally administrator in Missouri, had no official authority in this State except such as by comity would be recognized; and the rules of comity might be determined either by usage, of which the judicial decisions would be evi-dence, or by statute. Some of these rules are general and are well settled. There are cases, for example, where it has been held that a foreign administrator has a right to collect and take possession of personal property, and remove it for the purposes of administration : *Doolittle v. Lewis* 7 Johns. Ch. 45 ; *Brown v. Brown* 1 Barb. Ch. 189 ; *Vroom v. Van Horne* 10 Paige 549 : s. c. 42 Am. Dec. 94; *Riley v. Riley* 3 Day 74: s. c. 3 Am. Dec. 262; *Smith v. Guild* 34 Me. 443; *Rand v. Hubbard* 4 Metc. 252; *Marcy v. Marcy* 32 Conn. 308; and where there are no domestic creditors or other claimants, there will be no occasion to question such cases. There may also be cases of payments to a foreign adminis-trator which may be recognized, there being no conflicting administration. *Williams v. Storrs* 6 Johns. Ch. 353; *Tre-cothick v. Austin* 4 Mas. 16, 33 ; *Wilkins v. Ellett* 9 Wall. 740; *Vroom v. Van Horne* supra ; *Citizens' Bank v. Sharp* 53 Md. 521. And where an administrator, in the forum of his appointment, has assigned demands bona notabilia there, it may be correct to hold that his assignee may sue thereon here in his own name, as was held in *Harper v. Butler* 2 Pet. 239, and *Peterson v. Chemical Bank* 32 N. Y. 21, and cases there cited; as to which see *Knapp v. Lee* 42 Mich. 41.

But this case involves the validity of the assignment of a debt secured by a real-estate mortgage on lands in this State. It was decided in *Cutter v. Davenport* 1 Pick. 81, that the foreign administrator had no authority to make such an assignment; and this is followed in the recent case of *Dial v. Gary* 14 S. C. 573 : s. c. 37 Am. Rep. 737. Whether these decisions would be followed in this State if there were no statute bearing upon the question, we do not care to inquire, because we think if the power to assign would exist independent of statute it does not exist under the statutes now in force.

The statutes provide for recognizing the authority of a foreign administrator when it becomes necessary to make sale of lands in this State, and prescribes the steps to be taken for that purpose. How. Stat. §§ 6057–6061. If administration is needed in this State for other purposes, new letters must be taken out; and an administration ancillary to one in another state would proceed like any other up to the time of accounting. And for the purpose of selling lands, it seems very clear that a public administrator could not be recognized in this State at all; for the statute contemplates the case of an administrator "appointed" in some other state or country, who shall produce and file in the proper court "an authenticated copy of his appointment." Section 6057. A public administrator having no appointment for the special case would not be within the terms of this statute.

But we may pass by without further remark any question of what Lewis might or might not have done had he undertaken to proceed in this State under its statutes. What he did in fact was to proceed without regard to the statutes and in contempt of authority which was being taken, in regular form at least, under them. And unless under such circumstances he had authority to sell and dispose of the mortgage in suit, it must have remained the property of the estate.

Now a mortgage of lands is in this State a conveyance within the meaning of the recording laws, and goes upon record as such. How. Stat. § 5689. It becomes necessary to record it, therefore, to prevent its being cut off by subse-

quent conveyances. Id. § 5683. It is not allowed to be foreclosed under the power of sale until the mortgage and any assignment thereof are duly recorded. Id. § 8498. And no one could make a valid assignment of a mortgage which would be sufficient for the purposes either of foreclosure or of record, unless his own authority was of record so that the title made under a foreclosure would appear by the record to be complete. It follows that a foreign administrator could make no assignment of a mortgage in this State ; and this is so well understood that it is not uncommon in this State to have ancillary letters taken out here for no other purpose than to assign mortgage securities. The case of *Doolittle v. Lewis* 7 Johns. Ch. 45, in so far as it recognizes the right of a foreign administrator to foreclose under the power of sale, would be inapplicable in this State by reason of the statutory provisions referred to.

But a foreign administrator would be equally powerless to discharge a mortgage. The discharge is for the purpose of relieving the record of the apparent mortgage lien, and this would not be accomplished unless the authority of the party assuming to discharge was itself of record. The statute imposes a penalty on the mortgagee, his personal representative or assignee who, when payment of the mortgage debt has been made, neglects or refuses, after demand, to discharge the mortgage. How. Stat. § 5704. But a foreign administrator who would be powerless to give a legal discharge could not be within the provisions of this section. Lewis therefore was assuming to sell a mortgage which he was without authority either to enforce or discharge.

But a perfectly conclusive objection to the validity of the sale of the mortgage made by Lewis is seen in the fact that there was at the very time an administration in this State. There is no ground for even a suggestion that that administration was invalid. The intestate left both property and debts in this State, and the jurisdiction of the court which made the Michigan appointment was unquestionable. Administration in Michigan indeed, if the estate was to be preserved from such ruthless destruction as Lewis undertook

to visit it with, was a necessity; and if he had had any proper sense of his office and a due regard to the rights of parties concerned, he would have recognized the Michigan administration, and have sought to act in harmony with it. Conflict was for any proper legal purpose wholly unnecessary.

No case has been called to our attention in which it has been held that after letters issued in one state or country a foreign administrator can be recognized there even for the purposes of a voluntary payment; and the cases like *Vaughn v. Barret* 5 Vt. 333; *Young v. O'Neal* 3 Sneed 55 and *Ferguson v. Morris* 67 Ala. 389, which deny the validity of such a payment generally, if questionable when no domestic appointment exists, are perfectly sound and reasonable if there is at the time a valid administration in the state. See *Noonan v. Bradley* 9 Wall. 394, 405. It is the duty of citizens of the state to recognize and defer to the judicial determination of its own tribunals, as much when they concern matters of administration as in other cases: *Henderson v. Clarke* 4 Litt. 277; *Glenn v. Smith* 2 Gill. & J. 493: 20 Am. Dec. 452; and this is especially true in a case like the present where nothing existed to bring in question the judicial determination of the Michigan court, except the bare assertion of his own authority by the foreign official. By the law of this State the title to this demand for all purposes of administration was in the Michigan administrator, who might put it in suit when due or assign it of record or discharge it of record. He was therefore the only person who could be safely dealt with in respect to it. The claim by the foreign official was inconsistent with these undoubted rights and was negatived by them.

The decree must be affirmed.

CAMPBELL, J., concurred.

SHERWOOD, J. On the 8th day of October defendants Mary E. Lusk and William Lusk made their note to Warren A. Sherwood for $1125, payable on or before five years from date, at St. Louis, Mo., with interest at ten per cent. To

secure the payment of this note the said Mary E. Lusk and defendant Bernard McMullen and Elizabeth A. McMullen, his wife, and Julius A. Lusk executed a mortgage on 160 acres of land lying in Gratiot county in this State.

Sherwood was an unmarried man, and lived and did business at St. Louis, Missouri, from about 1872 to the time of his death, which occurred there on March 27, 1876. He left no heirs in the state of Missouri and no will. Among the papers he had with him in St. Louis at the time of his death was the note in this suit. Sherwood died at a hotel, and the next day after his death, M. D. Lewis, the public administrator of the county of St. Louis, took possession of the personal effects of the deceased in Missouri, assumed control over them, and as such public administrator proceeded to administer the estate under the laws of Missouri, and such action was taken by him thereafter, under the direction of the probate court of St. Louis, that on the 25th day of June, 1878, he sold at public auction in St. Louis the note and mortgage in this suit, and transferred the same, as administrator, with other effects of the deceased, to one Francis G. Flanagan, who paid for the mortgage on such sale eighty dollars.

The testimony shows that at the time of this sale A. G. Russell, administrator of the estate of said deceased in the State of Michigan, was present, and caused notice to be given that most of the Michigan debts due the estate had been paid, and such as had not been should be paid to him. On the 22d of November, 1878, Flanagan assigned the note and mortgage to Harriet W. Barr (the consideration being about $300), who, on the 14th day of December following, by her attorney in fact, discharged the mortgage of record, and delivered the note and discharge to defendant Bernard Mc-Mullen. Defendants Frue, Mary C. Lusk, Doane, and Moss became interested, either as purchasers or incumbrancers, after the discharge of the mortgage. On the 29th day of May, 1876, Albert G. Russell, brother-in-law of deceased, was appointed by the probate court of Ionia county administrator of Sherwood's estate in Michigan. Russell died September 26, 1878, and William Reynolds, the complainant

in this case, was on December 10, 1878, appointed administrator in his stead, who, after making demand of Bernard Mc-Mullen for the note and mortgage on January 22, 1882, filed the bill in this case to remove and set aside the discharge of record and foreclose the mortgage.

The cause was heard by the circuit judge upon pleadings and proofs, and a decree made in accordance with the prayer of the bill. Defendants Doane, Frue and Moss were made parties to the bill of complaint under the general averment against subsequent purchasers and incumbrancers, and they bring this appeal. The complainant's counsel urges that the decree given at the circuit should be sustained for the following reasons:

"1st. Sherwood, at his decease, was a resident of Michigan; the debtor resided here; the land is here; hence the mortgage and note must be controlled by the Michigan administrator, and the Missouri administrator could confer no title upon the purchaser from him.

2d. Sherwood's estate was not such an estate as, under the laws of Missouri, the public administrator could administer; hence he could confer no title upon the purchaser from him.

3d. Even if this was such an estate as Lewis, being administrator, could administer, the evidence shows the proceedings to be so irregular that no title can be based or founded upon them; and hence the pretended payment was to one having no right to receive it, and the discharge is void.

4th. The proceedings by the administrator in Missouri are not under the common law, but purely statutory; and in order for any one to derive title through them, it must affirmatively appear that the statute has been complied with. There can be no presumption in favor of their validity.

5th. Even if Warren A. Sherwood had his domicile in Missouri at the time of his death, the debt was at his death an asset to be administered in Michigan, and the Missouri administrator had no right to administer it, or attempt in anywise to control it, and any payment made to the assignee of the Missouri administrator, or discharge made by such assignee, is no bar to a recovery in this case.

6th. The gross inadequacy of the price paid for this note and mortgage at the sale, and the gross inadequacy of the amount received for the Michigan assets, raises a presumption of fraud; and it not being explained, a court of equity will

not sustain the sale, but must hold that no title passed to the purchaser."

By the law of Missouri the public administrator has the right to administer upon estates in the following cases, viz. :

(1) When a stranger dies intestate in the county without relations or confidential friends, or dies leaving a will, and the executor named is absent or fails to qualify; (2) when persons die intestate without any known heirs, and administration is not undertaken by some other responsible person; (3) when persons unknown die or are found dead in the county; (4) when money, property, papers or other estate are left in a situation exposed to loss or damage, and no other person administers on the same ; (5) when any estate of any person who has died elsewhere is left in the county, liable to be injured, wasted or lost, or is not in the lawful custody of some responsible person; (6) when from any other good cause said court shall order him to take possession of any estate to prevent its being injured, wasted, purloined or lost." See Statutes of Missouri, p. 516, sec. 8.

It is presumed a party's domicile is in the state or county where he dies, until the contrary appears. *In re Olson* 63 Ia. 145.

I have examined all the testimony upon the first point carefully, and am satisfied upon this record that Sherwood, at the time of his death, was a resident of St. Louis, Missouri, and had his domicile there ; and further, that the personal estate sought to be administered there was such as might be properly administered in that state by the public administrator, unless it was the notes and mortgages of the deceased owing and secured by parties residing outside of Missouri. It appears from the record and the statutes of Missouri, which, so far as they are applicable to the case, constitute a part of the record (by stipulation of the parties), that the probate court of St. Louis had jurisdiction of the effects of deceased persons who die within that state, and who are inhabitants thereof. It also appears that it exercised that jurisdiction in the case of the estate of Warren A. Sherwood, and made orders and decrees therein, and that the public administrator

acted under the orders and decrees thus made, and in so doing made sale of the note and mortgage in question.

It is claimed, however, that these proceedings were so irregular that no title to the property sold could be derived through them, even though the court had jurisdiction to direct a sale of this claim. This suit is a collateral attack upon those proceedings, and in such case, although the proceedings may be so irregular as to be voidable by the law of Missouri, they are not void. The orders and judgments of the probate court in such case are valid until reversed, and are not subject to be reviewed collaterally. *Jackson v. Robinson* 4 Wend. 436 ; *Headlee v. Cloud* 51 Mo. 301. When there is a want of jurisdiction, or fraud has been committed in its exercise, and a party's interests are injured thereby, he may always show such facts in seeking his remedy or in making his defense against proceedings defective for either of those reasons.

The real question in the case, upon the facts appearing upon this record, is this : Were the debts, owing by persons residing in this State to the deceased, assets to be administered by the court in Missouri, or by the court in Michigan ? If such indebtedness constituted not only effects of the deceased, but assets proper to be administered in Missouri, then I do not think the decree made by the circuit judge was right, and it ought to be reversed ; but on the contrary, if they were assets to be administered in Michigan, then the decree at the circuit ought not to be disturbed. There is no question but that the personal estate of the deceased must be distributed according to the law of his domicile at the time of his death ; but this does not dispose of the question presented for our consideration.

It appears very clearly that at the time of Sherwood's death he had quite large interests in Michigan. In fact, if the proceedings in Missouri are to be taken as any indication of the amount of his estate here, it would appear that the great bulk of his property was here. It further appears beyond question, I think, that the deceased at the time of his death was owing over $2500 to parties in this State ; that his

relatives and friends all lived in Michigan and New York; and that it was his express desire that when he died his remains might be removed to and buried here. It appears also that deceased had the note with him in Missouri when he died, but not the mortgage, and that when the note was sold there was an administrator duly appointed, and acting as such, and taking charge of the estate and effects in Michigan, where the note was given, and where the maker resided; that the note and mortgage, when sold in Missouri by the public administrator, were not yet due, and that he knew of the administration in Michigan at the time he made the sale and executed the transfer thereof.

The common law is in force and must prevail in this State, except so far as it is repugnant to or conflicts with our Constitution and statutes, and questions of right to property and remedies applicable thereto, contained in the common law, and not clearly excepted from it, must be determined by it, modified only by such circumstances as make it inapplicable to our local affairs. Const. Sched. 1: How. Stat. p. 72 ; *Stout v. Keyes* 2 Doug. (Mich.) 184; *Lorman v. Benson* 8 Mich. 18. I know of no statute changing the common law upon the subject in our State, nor of any circumstances in our local affairs rendering it necessary. By the common law, debts due by specialty are esteemed to be the goods of the deceased where the securities are at the time of his death ; but debts due by simple contract follow the person of the debtor, and are regarded as the goods of the deceased where the debtor resides at the time of the creditor's death. 3 Bac. Abr. (Wils. ed.) 37–8; Toller's Law of Executors, 55; 1 Wms. Saund. 274, note 3; *Speed v. Kelly* 2 Am. Prob. Rep. 553; *Wyman v. United States* 29 Alb. Law J. 194; *Slocum v. Sanford* 2 Conn. 534.

I am unable to see any good reason for the distinction made between debts by specialty and by simple contract, or why they should not all be deemed assets to be administered at the same place. The proceeds after payment of debts have all to be distributed according to the law at the domicile of the deceased; but such is the law as we find it, and a

change is for the Legislature, and cannot properly be made by this Court. There can be no question but that the note was a simple contract debt and subject to the law applicable to that kind of claims. *Slocum v. Sanford* supra; 2 Cooley's Bl. Com. 510.

This Court has already decided that the debts in this State due to a person resident in another state, dying there, can only be enforced by an executor or administrator duly appointed here (*Vickery v. Beir* 16 Mich. 50; *Thayer v. Lane* Walk. Ch. 200); and such is the rule at common law. Story's Confl. Laws §§ 513, 514 and cases cited. The assignee of these claims, due from the debtors in this State, stands in no other or better position than did the public administrator who made the assignment to him, and could confer no rights which he did not possess (*Chapman v. Fish* 6 Hill 554; *Thompson v. Wilson* 2 N. H. 291), and payment to him is no defense to this suit. *Disosway v. Carroll* 4 Lans. 191; *Vaughn v. Barret* 5 Vt. 333; *Pond v. Makepeace* 2 Met. 114; *Riley v. Riley* 3 Day 74; *Glenn v. Smith* 2 Gill & J. 493; *McLean v. Meek* 18 How. 16. The proper place for administering such assets must necessarily be where alone payment can be enforced against the debtor. I can come to no other conclusion upon the facts appearing upon this record.

It necessarily follows that the note and mortgage were assets to be administered in this State, and that the public administrator in St. Louis acquired no right to sell or dispose of the same in that state to any person, or any right to the possession or control of the note and mortgage, further than to safely keep them and deliver the same to the administrator here when required, until after the estate in Michigan was settled and the debts there were paid. 2 Kent's Com. 433, 434; 2 Bl. Com. 509; Bac. Abr. " Executor " E; *Byron v. Byron* Cro. Eliz. 472; *Hilliard v. Cox* Ld. Raym. 562: Salk. 37; Whart. Confl. Laws § 604.

There is no doubt but that an executor or administrator may lawfully sell the personal estate of the deceased, unless prohibited, at public or private sale without the order of the judge of probate, within the jurisdiction of the court where

such property is assets in his hands for administration. He may do so even at a discount, though the property sold be notes and mortgages (*Burt v. Ricker* 6 Allen 77; 3 Redf. Wills 226, 229, 236); and the purchaser will take a good title thereto, provided the property was assets within the control and jurisdiction of the court where administration was granted. He cannot make such sale, however, when he has not the right to enforce collection. *Yeomans v. Bradshaw* Carth. 373; *Tourton v. Flower* 3 P. Wms. 369; *Isham v. Gibbons* 1 Bradf. Sur. 69; Story on Confl. Laws §§ 512, 513, 514, 515a, 522, 523; *McCarty v. Hall* 13 Mo. 480; *Chapman v. Fish* supra; *Goodwin v. Jones* 3 Mass. 514; *Riley v. Riley* supra; *Stearns v. Burnham* 5 Greenl. 261; *Harrison v. Sterry* 5 Cranch 289; *Dawes v. Head* 3 Pick. 138; *Harvey v. Richards* 1 Mas. 423; *Glenn v. Smith* supra; *Vaughn v. Barret* supra; *Lee v. Havens* Brayt. 93; *Thompson v. Wilson* 2 N. H. 291; *Judy v. Kelley* 11 Ill. 211; *Willard v. Hammond* 21 N. H. 382; *Smith v. Guild* 34 Me. 443; *Langdon v. Potter* 11 Mass. 313; Rorer Interstate Law 248; *Speed v. Kelly* 59 Miss. 47; *Owen v. Miller* 10 Ohio St. 143; *Abbott v. Coburn* 28 Vt. 663; *Vaughan v. Northup* 15 Pet. 1; *Noonan v. Bradley* 9 Wall. 394; *Willitts v. Waite* 25 N. Y. 577; *Valle v. Fleming* 19 Mo. 454.

I am aware there is a conflict of authorities upon this subject, and several very able jurists take a different view from that above expressed. *Petersen v. Chemical Bank* 32 N. Y. 40; *Grace v. Hannah* 6 Jones N. C. L. 94; *Rand v. Hubbard* 4 Met. 252. The weight of authority, however, I think, is clearly in favor of the position herein taken.

I think the decree of the circuit judge was right, and should be affirmed.

CHAMPLIN, J. did not sit in this case.