NATIONAL LUMBER COMPANY *v.* GOODMAN.

ROCFORM CORPORATION *v.* SAME.

1. VENDOR AND PURCHASER—ASSIGNMENT—ACCEPTANCE BY SELLER—RESTRAINT OF ALIENATION.

   A provision of a land contract that an assignment or conveyance thereof shall not create any liability against the seller unless a duly-executed duplicate thereof together with the residence address of the assignee, shall be delivered to and accepted by the seller, and receipt thereof indorsed on the land contract is not invalid as a restraint of alienation, since it does not bar an assignment but sets forth an agreement between the contracting parties as to the method in which an assignment or conveyance must be made to affect the rights of the vendor.

2. WORDS AND PHRASES—CONVEYANCE—MORTGAGES.

   The term *conveyance* embraces a mortgage of lands (CL 1948, § 565.35).

3. CONTRACTS—CHOICE OF CONTRACTEE.

   A person has a right to choose those with whom he would contract.

4. VENDOR AND PURCHASER—ASSIGNMENT OF LAND CONTRACT—ACCEPTANCE BY VENDOR.

   Assignment of land contract by way of mortgage of the vendee interest, which conveyance had not been accepted by the

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 55 Am Jur, Vendor and Purchaser §§ 432, 433.
[2] 16 Am Jur, Deeds § 3.
[3] 12 Am Jur, Contracts § 38.
[4] 55 Am Jur, Vendor and Purchaser §§ 432, 433, 453.

vendor, *held,* not to have entitled the mortgagee to equitable relief by way of injunction against foreclosure of the land contract, where provision of the land contract relative to assignment or conveyance thereof conditioned imposition of liability upon the vendor upon his acceptance of the assignment or conveyance, making the contract one of a personal nature.

Appeal from Macomb; Carroll (Howard R.), J. Submitted June 5, 1963. (Calendar Nos. 19, 20, Docket Nos. 49,916, 49,917.) Decided September 4, 1963. Rehearing denied October 9, 1963.

Bill by National Lumber Company, a Michigan corporation, against Albert J. Goodman and Jerome Gropman, trustee in bankruptcy of Elliott-Jared Investment Company and allied corporations, and against William H. Nunneley, circuit court commissioner, to compel conveyance of lots under release clause in land contract, to restrain issuance of writ of restitution on foreclosure, and for other relief.

Similar bill by Rocform Corporation, a Michigan corporation.

Actions consolidated for trial and on appeal. Bills dismissed. Plaintiffs appeal. Affirmed.

*Herbert N. Weingarten* and *Stuart E. Hertzberg,* for plaintiffs.

*David M. Miro,* for defendant Goodman.

KAVANAGH, J. These cases were consolidated for trial in the Macomb county circuit court, and are here on joint appeal. Plaintiffs attempted to enjoin, by bills of complaint, land contract foreclosure proceedings instituted by defendant Albert J. Goodman to obtain possession of certain lands and sought to have those proceedings declared void. Plaintiffs

claim the right to substitute themselves as mortgagees of the vendee Elliott-Jared Investment Company and obtain conveyances under the release provisions of the Goodman land contract.

The subject land contract was executed on January 18, 1956. By its terms defendant Goodman contracted to sell 101 lots in Venetian Village subdivision, Macomb county, Michigan, to Elliott-Jared Investment Company. Elliott-Jared was 1 of a group of companies owned and controlled by Elliott Schubiner. The contract contained the following provision:

"No assignment or conveyance by the purchaser shall create any liability whatsoever against the seller until a duplicate thereof, duly witnessed and acknowledged, together with the residence address of such assignee, shall be delivered to and accepted by the seller, and receipt thereof indorsed thereon."

A paragraph in a rider to the contract specifically provided that upon assignment of the contract, Elliott-Jared would be released from any personal obligation thereunder. The rider, however, did not alter in any way the legal force and effect of the foregoing no-assignment clause.

A third modification of the land contract extended the due date to January 1, 1961, and called for a release price per lot of $3,200.

In September of 1958, three of the building corporations controlled by Elliott Schubiner executed notes and mortgages on 5 lots to plaintiff Rocform Corporation to secure indebtedness owed Rocform for materials supplied for the construction of houses in the subdivision.

In March of 1960, two of the building corporations executed notes and mortgages to plaintiff National Lumber Company covering 3 other lots.

At no time prior to the expiration date of the land contract were duplicates of these mortgages or assignments presented to the vendor in accordance with the applicable provision of the contract.

At the time these mortgages were executed neither Elliott-Jared nor the building corporations had acquired fee simple title to the 8 lots involved in this appeal, and at no time thereafter was title acquired. Quitclaim deeds were executed by Elliott-Jared to certain of the building corporations covering 4 of the 8 lots, but there were no other conveyances. However, it was not disputed at the trial, nor is it disputed in this appeal, that the building corporations and Elliott-Jared Investment Company were 1 entity. In fact exhibit 14, admitted in evidence in these cases, is a petition and order for consolidation in the bankruptcy court. In the petition Elliott Schubiner represents that all or nearly all of the corporations have the same officers and same business addresses; that the officers, directors, and shareholders of each are the same, with 1 or 2 exceptions; that each of the corporations is operated as a part of 1 general purpose; and that although each of the corporations is a determined legal entity, each is the alter ego of the Elliott-Jared Investment Company.

In *Acton Plumbing & Heating Company* v. *Jared Builders, Inc.,* 368 Mich 626, this Court affirmed a similar holding of the circuit court for Wayne county to the effect these corporations were the alter ego of Elliott-Jared Investment Company. Therefore, the mortgage transactions with respect to the 8 lots in question here are treated as having been given by Elliott-Jared Investment Company.

By December 1, 1960, one month before the expiration of the contract, there existed on the 8 lots in question houses in various stages of construction. In order to protect their interest plaintiffs entered into negotiations with defendant Goodman. Plain-

tiffs offered to pay Goodman whatever moneys were due and owing under the release provisions of the contract with respect to the 8 lots upon which they held mortgages. Goodman refused to deal with the corporations, but did offer to extend the contract for 1 year or 1-1/2 years upon payment of accrued interest and back taxes on the entire contract if plaintiffs could reach some agreement with Elliott Schubiner. Plaintiffs were unable to do this. Mr. Schubiner, on behalf of Elliott-Jared, refused to become a party to any agreement unless he was paid. The amount demanded varied throughout the negotiations from $7,000 to $15,000. No agreement was reached. Plaintiffs did not make a formal tender of the amount necessary to release the 8 lots. However, the trial court found as a fact plaintiffs made their offer to pay and the offer was refused by Goodman.

After January 1, 1961, when the entire contract balance became due, defendant Goodman instituted foreclosure action in the form of summary proceedings. On May 8, 1961, Goodman obtained judgment in the total sum of $102,383.25. Elliott-Jared Investment Company and the affiliated building corporations were subsequently adjudicated as bankrupts. This suit was instituted August 13, 1961, some weeks before the expiration of the redemption period.

At the close of plaintiffs' proofs, defendant Goodman renewed his motion to dismiss plaintiffs' bills of complaint. At that time defendants' attorney indicated he was satisfied with the state of the proofs. We conclude that defendants thereby rested.

In a written opinion the trial court found that plaintiffs had made offers to Goodman for the release of the 8 lots in December of 1960, and that Goodman had rejected these offers. Such finding is amply supported by the testimony in the record. However, the court ruled that plaintiffs had no equitable basis

for relief, and had reached their present position by careless conduct. Concluding that plaintiffs' equities were not superior to those of defendant Goodman, the court granted the motion to dismiss on the theory when equities are equal the party holding legal title shall prevail.

A similar provision to the one present in this land contract restricting alienation has been held by this Court not to be invalid because of being in restraint of alienation, since it does not bar assignment of the contract but merely is an agreement between the contracting parties as to the method in which an assignment or conveyance must be made to affect the rights of the vendor. *William F. Nance Realty Co.* v. *Wood-Wardowski Co.*, 242 Mich 110.

Equally well settled is the rule that the term "conveyance" embraces a mortgage of lands. *Reynolds* v. *McMullen,* 55 Mich 568 (54 Am Rep 386); *Stover* v. *Bryant & Detwiler Improvement Corporation of Detroit,* 329 Mich 482; CL 1948, § 565.35 (Stat Ann 1953 Rev § 26.552).

It is not disputed that at the time the negotiations took place between plaintiffs and defendant Goodman, the vendee, Elliott-Jared Investment Company, had the right to a release of any or all of the remaining lots upon payment of the same amounts offered by plaintiffs. Defendant Goodman testified he had a legal obligation to convey upon payment by Elliott-Jared Investment Company of such sums.

Plaintiffs contend that as mortgagees of a vendee's interest under a land contract, they have the right to step in the shoes of their mortgagor and exercise the right to obtain a release of the 8 lots in order to protect their interest. Accepting, *arguendo,* this basic contention, plaintiffs face a second hurdle, namely, whether their offer of payment is a sufficient basis for granting equitable relief, even though they breached the contract provisions requiring pres-

entation and indorsement of the conveyance. Authority exists for such a rule (*Jankowski* v. *Jankowski,* 311 Mich 340; *William F. Nance Realty Co., supra*), where the assignee of the vendee has acquired the full interest of the vendee and tenders full payment of the contract price.

The record in the instant case discloses there were several extensions and modifications of the contract, which were obviously concessions to the vendee to enable it to perform. This, together with the provisions relating to presentation and indorsement of an assignment or conveyance, indicates the contract was of a personal nature.

The law recognizes the right of a person to choose those with whom he would contract. It would appear for reasons best known to himself, perhaps because of the promotional ability of Elliott Schubiner, that defendant Goodman was willing to grant personal extensions and release lots to him, fully confident that he would be able to perform the remainder of the contract.

We conclude that this personal element, which in no way affected the assignability of the contract, prevented any equities arising that would interfere with the vendor's right to insist upon strict compliance with the contract terms. In neither *Jankowski* nor *Nance Realty* were the contracts of such a personal nature.

For the reasons stated, the decree of the trial court dismissing the bills of complaint is affirmed.

Defendants shall have costs.

Carr, C. J., and Dethmers, Kelly, Black, Souris, Smith, and O'Hara, JJ., concurred.