# Supreme Court Decisions.

## POWER OF AN EXECUTOR CONFINED TO HIS OWN STATE.

In the Matter of the Estate of Mabel Crawford, Deceased.

Decided, March 2, 1903.

*Executor and Administrator's Power—Emanates from Laws of State
of Appointment—Confined to said Territory—Assets in other
States Accounted for to Proper Court Thereof—Will does not
Change Rule—Ohio Probate Court in Letters Testamentary—No
Power to Review Accounts in Michigan—Parties Voluntarily Sub-
mitting Subject Matter to Court of Jurisdiction—Waive Right to
Object to that Court's Jurisdiction—Although Cause Taken from
Inferior Court Without Jurisdiction—Wills—Jurisdiction—Appeal
—Law of Administration.*

1. It is a generally accepted rule that the power of an administrator
or executor over the estate of the decedent emanates from the
laws of the state where he receives his appointment, and is con-
fined to the territory of such state. It does not, *de jure*, extend
to other states, and can not confer, as a matter of right, any au-
thority to collect assets of the deceased in any other state. Such
assets are to be collected and administered by virtue of the laws
of such state, and accounted for to the proper court thereof.
And the rule is the same whether the administration is general or
with the will annexed.

2. The statutes of Michigan do not, by comity or otherwise, accord
the right of an executor appointed in another state to administer
the trust as to property in Michigan by force of the laws of such
other state. Whatever right such executor acquires as to such
assets must be obtained by virtue of the laws of Michigan, and
he must account for the disposition thereof to the proper court
of that state. Hence an Ohio probate court, although it has ad-
mitted to probate an Ohio will, and has issued letters testamentary
to the executor therein named, has not power to review the ac-
counts of such executor respecting property situate in the state
of Michigan, and for which he has duly accounted to the proper
court of that state.

3. Where parties voluntarily, and without objection, submit their con-
troversy to a court having jurisdiction of the subject matter, and

the cause proceeds therein regularly to trial and final judgment, they will be held to have waived their right to object to the jurisdiction of that court even though the cause may have been taken to it by appeal from an inferior court which had not jurisdiction of the subject matter.

Error to the Circuit Court of Lucas County.

The controversy arose in the courts below upon exceptions to the account of William R. Stafford, executor of Mabel Crawford, deceased, filed in the Probate Court of Lucas County. The record is long and much involved, but the facts following, gathered from it, are sufficient to show the grounds of error and the questions disposed of. The testatrix, a resident of Toledo, deceased May 20, 1891, leaving a will which was duly probated and letters testamentary issued to Clay Crawford and William R. Stafford, executors therein named, who accepted the trust. The substance of the will follows: After giving, by item two, certain specific articles of personal property to an aunt, and after creating trusts in favor of other beneficiaries, the testatrix then gives $10,500 in trust for the benefit of the following parties, viz.: $2,000 to the American Missionary Association; $2,000 to the Methodist Episcopal Church of Caseville, Michigan; $2,000 to the Washington Street Congregational Church, of Toledo, Ohio; $2,000 to the American Board of Commissioners of Foreign Missions; and $2,500 to the Protestant Orphans' Home, of Toledo, Ohio, and then provides:

"Item IX. I hereby nominate and appoint said William R. Stafford and Clay Crawford executors of this, my last will and testament; and I hereby give, devise and bequeath all my real and personal property of every kind and nature (save and except as is specified in item two herein), to said above named executors, in trust for the execution of my will, with power and full authority to sell and dispose of the same, at public or private sale at such times (within three (3) years after the date of my death), and upon such terms and in such parts as to them shall seem best, and I hereby authorize said executors or either of them, who shall qualify, to sell as above or lease or mortgage any part of my property, if in their opinion it is advisable so to do, and to execute and deliver any instruments or writings necessary or proper to carry into effect any powers granted in this will, and to sell and convey any or all my real estate in fee simple without being required to obtain any orders of court therefor, and with full power to settle, compromise, arbitrate or adjust any claim due either to or from my estate on such terms as they may deem best.

I request that no bond be required of said executors or either of them.

"Item X. After said executors have converted the property herein conveyed to them into money, and after they have paid the costs and expenses of the administration hereof and the debts as provided in item one (1) herein, and after they have put at interest the full amount of the two funds specified in items six (6) and eight (8) herein, and after paying as provided in item seven (7) herein, then out of the entire balance remaining I desire the bequests mentioned in items three (3), four (4) and five (5) herein, to be fully paid. If from any cause there be a deficiency and there be not enough to pay in full each bequest in said last three items mentioned, then each bequest in said last three items shall bear its part of such deficiency, in the proportion which each bequest bears to the total sum of all bequests specified in said items numbered three (3), four (4) and five (5) herein; but if, as I expect, there be a surplus, and the balance remaining shall be greater than is needed to pay the full amount of each bequest specified in said items three, four and five herein, then after paying the full amount of each bequest in said items three, four and five herein, I give and bequeath all such surplus (intending to thereby dispose of all the balance of my property) to the parties named in bequests specified in items numbered three (3), four (4), five (5) and eight (8) herein. Such surplus to be divided between and added to each bequest specified in said last mentioned four items, in the proportion which each bequest bears to the total sum of all bequests specified in said last mentioned four items."

A large portion of the estate, being real estate, was situated in Huron county, in the state of Michigan. The personal estate in Ohio was more than sufficient to pay funeral expenses, and there were no other debts. Shortly after the will was probated an action was commenced in Lucas county by the mother of the deceased to contest the will, which suit was pending until March 10, 1893, when trial was had and final judgment entered validating the will.

July 9, 1891, William R. Stafford was appointed special administrator of the estate by the Probate Court of Huron County, Michigan, and May 17, 1893, the will was probated in that court and letters testamentary issued to Stafford. These letters required Stafford to render a just and true account of his administration to that court. The bond was to like effect. Upon so qualifying as executor, Stafford, as required by the statute of Michigan, forthwith delivered to himself as executor all assets in his hands as special administrator. August 4, 1896, he presented his final account as such special administrator. Exceptions were at once filed

to a portion of the items by 'Clay Crawford, executor, and especially representing the Protestant Orphans' Home of Toledo, Ohio, and the Washington Street Congregational Church of Toledo Ohio, (legatees under the will), several of the exceptions being founded on the claim that the items were solely cognizable by the Probate Court of Lucas County, Ohio. Due notice, as shown by the record and found by the court, was given to all persons interested in accordance with the Michigan statute, and on hearing the exceptions were in part sustained and in part overruled. From this judgment Clay Crawford took an appeal to the Circuit Court for the County of Huron, Michigan. March 30, 1897, the account and exceptions were tried on the appeal in the circuit court, and by that court the account, as stated by the probate court, was approved. December 6, following, the probate court duly discharged, exonerated and acquitted said Stafford ,as special administrator, from all liability concerning the estate, and canceled the bond and revoked the letters.

On August 4, 1896, Stafford also presented in the Probate Court of Huron County his first account as executor. To this account Clay Crawford, as executor and 'residuary legatee, and especially representing the Protestant Orphans' Home of Toledo, Ohio, and the Washington Street Congregational Church, of Toledo, Ohio, filed exceptions to all the items of the account, alleging among other things that they were not properly cognizable for allowance in the Probate Court for the County of Huron, but were solely cognizable by the Probate Court of Lucas County, Ohio. A time for the hearing was fixed, due notice given to all persons interested, and a hearing duly had, resulting in an order and judgment of that court allowing part of the account and disallowing part. From this judgment Stafford took an appeal to the Circuit Court of Huron County. At the March Term, 1897, of that court, the cause was tried on appeal resulting in a reversal of the judgment of the probate court save as to one item and a judgment otherwise allowing the account of the executor entered. The cause was then removed by writ of error sued out by Clay Crawford to the Supreme Court of Michigan, by which court, at its October Term, 1898, the judgment of the circuit court was affirmed.

November 10, 1896, Stafford filed his first account as executor in the Probate Court of Lucas County, Ohio, purporting to exhibit his transactions as executor arising out of that part of the

estate situated within the state of Ohio. Hearing as to this account was postponed owing to the pendency of exceptions to his Michigan accounts. Exceptions to this account filed in the Probate Court of Lucas County were interposed by the Protestant Orphans' Home, of Toledo, by which it was sought to have the Ohio Probate Court review the items of account relating to the Michigan assets and embraced in the Michigan accounts. These exceptions Stafford moved to have stricken from the files, averring: "1. That this executor has never filed in this court any account containing items to which the said the Protestant Orphans' Home does or pretends to except. That the paper writing against which said exceptions are directed (except the items above set forth, which related to the Ohio estate), was and is solely a copy of an account filed by this executor in the Probate Court of Huron County, Michigan, and relates to that portion of said estate situate in said Huron county, and was filed in this court for the purpose only of advising this court of the progress of the administration granted on said estate by the Probate Court of said Huron County, and which is and was entirely distinct and separate from any administration granted by this court. 2. That said account has been fully heard, determined and confirmed by the courts of the state of Michigan, having jurisdiction thereof, and such hearing was had on said account and upon exceptions filed thereto by Clay Crawford, one of the executors of said estate, representing himself as such executor, and also representing said the Protestant Orphans' Home of Toledo, Ohio; and that all said matters covered by said exceptions filed in this court by said the Protestant Orphans' Home are *res judicata* between the parties."

Pending the hearing the probate court ordered Stafford to file a complete account of all moneys received and paid out by him to February 1, 1899. This he failed to do except that he filed copies of his Michigan accounts. February 4, 1899, a re-statement of the account was filed in the Lucas Probate Court and appended to it an affidavit setting up the facts respecting his settlements in the Probate Court of Huron County, Michigan, and the action of that court and of the Circuit and Supreme Courts thereon, as hereinbefore given. Setting up, also, "that by reason of the premises, all said matters contained in his said accounts as special administrator, and also in his account as executor, so appointed by the Probate Court for the County of Huron and state of Mich-

igan, have been fully and finally determined and adjudicated by the courts having full jurisdiction of the subject matter and persons concerned: that on or before January 11, 1899, he duly filed in this court certified copies of his said account as said special administrator, and as such executor, together with duly certified copies of the findings and orders and judgments of said Probate and Circuit Courts of said County of Huron, and state of Michigan, and also of the judgment of the Supreme Court of the state of Michigan therein, to which he now refers and makes the same a part of this affidavit."

On hearing, the Probate Court of Lucas County overruled the motion of Stafford to strike off the exceptions to the Protestant Orphans' Home, sustained all the exceptions to Stafford's account, and restated and settled the account, embracing therein the items or most of them, contained in the Michigan accounts, and thus formed an indebtedness against the executor of $22,526.12. From this judgment Stafford appealed to the Court of Common Pleas of Lucas County, in which court he interposed the same motion to strike from the files the exceptions of the Protestant Orphans' Home, with this additional paragraph, viz.: "That by reason of the facts hereinbefore set forth this court has no jurisdiction to hear and determine the several matters contained in said alleged account nor any of the same, except those herein above specifically set forth." This motion was sustained so far as the exceptions related to that portion of the estate situated in the state of Michigan, and which had been accounted for in the courts of that state, and the exceptions were all overruled save as to one item. The Protestant Orphans' Home thereupon took a bill of exceptions. Later, an order was entered, on motion of the American Missionary Society, and the American Board of Commissioners for Foreign Missions, and the Washington Street Congregational Church of Toledo, legatees under the will, by which they became parties (the cause having thus far been prosecuted, as the court found, in the name of the Protestant Orphans' Home as one of the class, and for the benefit of all the legatees under the will), with full right to contest all issues still undetermined in this action, and with full right to institute proceedings in error founded on the bill of exceptions hereinbefore signed and filed March 12, 1900, and to do any act in relation thereto which either could have done

had such bill been taken, signed and filed by these parties respectively. Thereupon, on further hearing, the exceptions of the Orphans' Home were overruled except as to one item of $355, which was found well taken. Judgment accordingly was entered, to which the exceptors excepted, and carried the cause to the Circuit Court of Lucas County, where, at the January Term, 1901, of said court, the judgment of the court of common pleas was in all respects affirmed. The Orphans' Home, the Missionary Association, the Board of Commissioners for Foreign Missions, and the Congregational Church bring this error proceeding to obtain a reversal of the judgments of the circuit and common pleas courts, and an affirmance of that of the probate court.

*Rhoades & Rhoades* and *George W. Radford,* for plaintiffs in error.

1. The laws providing for the administration of estates primarily affect, reach and deal only with personal property; and neither an administrator nor an executor is, by virtue of his office, entitled to the possession or control of the real estate of a decedent, unless it be necessary for the payment of debts to sequester the rents, issues and profits arising therefrom, or sell the corpus thereof.

(*a*) At common law. Woerner Am. Law Adm., Sec. 355; 2 Am. & Eng. Enc. Law (2d Ed.), 741, 830; Crosswell on Exrs. & Admrs., 280; Williams on Exrs., 716, *et seq.*

(*b*) Under the statutes and decisions of the state of Ohio. Section 6136, Rev. Stat.; *Overturf, Admr.,* v. *Dugan,* 29 Ohio St., 230; *Piatt* v. *St. Clair's Heirs,* 6 Ohio, 227; Sec. 6146, Rev. Stat.

(*c*) Under the statutes and decisions of the state of Michigan. Section 5875, How. Ann. Stat.; *Streeter* v. *Paton,* 7 Mich., 341; *Campau* v. *Campau,* 19 Mich., 124; *Holbrook* v. *Campau,* 22 Mich., 288; *Ruff* v. *Womer,* 76 Mich., 375.

II. Hence it follows as a logical conclusion that any right to the real estate of the decedent which Mr. Stafford or Mr. Crawford may have, or to the rents, issues and profits thereof, was acquired, not by virtue of any office or appointment as executors, but solely from the will of the decedent; and this is the general rule of law. *Judson* v. *Gibbons,* 5 Wend., 224; *Newton* v. *Bronson,* 13 N. Y., 587; *Lessee of Lewis* v. *McFarland,* 9 Cranch, 151; *Wills* v. *Cowper,* 2 Ohio, 124,

III. A devise of lands is considered not as in the nature of a testament, but as a *conveyance* by the testator; and the devisee takes his title directly from the testator, not through the medium of the personal representative; and the title vests in him instanter upon the death of the testator.

(*a*)   A devise is a conveyance.   2 Cooley's Bl., 378; 4 Kent's Com., 510; 13 Am. & Eng. Enc. Law, (1st Ed.), 9, and cases there cited; Williams on Exrs., 6; *Conklin* v. *Egerton,* 21 Wend., 430.

(*b*)   Title vests in devisee at once upon death of testator. *Richards* v. *Pierce,* 44 Mich., 444; *Van Vleet* v. *Blackwood,* 39 Mich., 728; *Rood* v. *Hovey,* 50 Mich., 395; *Hall* v. *Ashby,* 9 Ohio, 96; *Jones* v. *Robinson,* 17 Ohio St., 171; 2 Cooley's Bl., 201, 243; 13 Am. & Eng. Enc. Law (1st Ed.), 150; Woerner Am. Law Adm., Sec. 185.

IV.   The requiring of the probate of the will, or the recording of a certified copy of such will and its probate, in case of a will made in another state, is simply to put on record proper and sufficient *evidence* of the devisee's title.   *Carpenter* v. *Denoon,* 29 Ohio St., 379; *Richards* v. *Pierce,* 44 Mich., 444.

Hence we hold that—

V.   When, at the probate of the will in Lucas county, Ohio, Crawford and Stafford accepted the devised property with the trusts thereon imposed, this real property vested in them as a conveyance direct from the testator.   It never became assets in their hands *as executors,* nor had they, *as executors* (there being no debts), any right to any part thereof.   But this property then vested in them as devisees charged with the execution of the trusts named by the devisor.   The fact that the same men are also named as executors in no way operates to lessen or impair the fee simple estate which they took under the will directly from the testator as a devise in trust.   Nor does this fact serve to change or modify in the least the propositions and conclusions heretofore reached.

It has been distinctly held by this Supreme Court of Ohio that a trust separate and apart from the executorship is vested in the persons named as executors, when—

(*a*)   There is a devise of real property direct to them, as in this case.

(b) When from the assets of the estate they are directed to set off certain sums, or property, or a residue.

In the first case the property vests directly in them as trustees. In the second case it vests in them as executors, and remains in their hands as executors till it is set apart to themselves as trustees and some definite act is done to change the character of the holding. This position is clearly pointed out in *Gandolfo* v. *Walker*, 15 Ohio St., 251.

1. There is a devise or bequest to the executor in trust, or where

2. Part of the assets are specifically set apart, and directed to be invested as a trust fund. In the former case the executor receives them at once as trustee, and they never become assets.

The reasoning of this case and the analysis therein made are (as to real property) so universally recognized as the law on the subject that scarcely a case will be found that does not conform thereto. And where land is devised in fee to the person named as executor he is held to take it as trustee directly from the devisor and not through himself as executor.

1. In Ohio. *Gilpin* v. *Williams*, 17 Ohio St., 397; *Mathews, Admr.,* v. *Meek*, 23 Ohio St., 272; *Veazie* v. *McGugin*, 40 Ohio St., 365; *Foster, Admr.,* v. *Wise, Admr.,* 46 Ohio St., 20; *Railway Co.* v. *Schmidt, Admr.,* 4 Circ. Dec., 535; 8 C. C. R., 355; *Wills* v. *Cowper*, 2 Ohio, 124; *In re Estate of Gallagher*, 7 Dec., 548; 5 N. P., 518.

2. The Michigan decisions on this point are to the same effect as those in Ohio. *Cranson* v. *Wilsey*, 71 Mich., 356; *Wooden* v. *Kerr*, 91 Mich., 188; *In re Sanborn's Est.,* 109 Mich., 191.

Further: In Michigan, by express provisions of the statutes, such a conveyance of lands to be sold to pay legacies or other charges is held to be an express trust and to vest the entire estate in the trustee for the purposes of the trust. Howard Ann. Stat., Sec. 5533.

Express trusts may be created for any or either of the following purposes: (1) To sell lands for the benefit of creditors. (2) To sell, mortgage or lease lands for the benefit of legatees, or for the purpose of satisfying any charge thereon. And other purposes.

3. In other jurisdictions. *Dix* v. *Burford*, 19 Bev., 409; *Newton* v. *Bronson*, 13 N. Y., 587; *Judson* v. *Gibbons*, 5 Wend., 224;

*Green* v. *Alden,* 42 Atl. Rep., 358; *Conklin* v. *Egerton,* 21 Wend., 430; *Lessee of Lewis* v. *McFarland,* 9 Cranch, 151; *Wheatley* v. *Badger,* 7 Pa. St., 459; *Simpson* v. *Cook,* 24 Minn., 187.

The provisions of Section 5981, Ohio Statutes, requiring a testamentary trustee to execute bond under certain circumstances, have no application to the case at bar, because the testator requested that no bond be required.

Because their not giving bond, even had it been required, would not have prevented the vesting of the devise in them as trustees, nor have relieved them from any obligation to account for trust property. *Mitchell* v. *Albright,* 10 Re., 301; 20 Bull., 101; *Martin* v. *Falconer,* 10 Re., 771; 23 Bull., 333.

VI.   Rights thus vested could not be divested by any action of the Probate Court of Huron County, Michigan, which is a court whose jurisdiction is limited to strictly probate matters, having, over such a trust as this, no jurisdiction whatever, and powerless by any decree or order it could make to settle any accounts as to this trust property. *Bescancon* v. *Brownson,* 39 Mich., 388.

(*a*)   The jurisdiction of the Probate Court of Huron County, Michigan, may be inquired into here, and, if that court was without jurisdiction over the subject matter of this trust, any decree or order it may have made with reference thereto is void and of no force to bind this court. *Pennywit* v. *Foote,* 27 Ohio St., 600; *Spier* v. *Corll,* 33 Ohio St., 236; *Scobey* v. *Gano,* 35 Ohio St., 550; *Cross* v. *Armstrong,* 44 Ohio St., 613.

(*b*)   Courts of probate are limited as to jurisdiction to strictly probate matters, and are without authority over trusts and their execution unless such power is expressly given them by statute.

The original jurisdiction over the personal property of a decedent was in the ecclesiastical court. But in this country, and in England since 1857, this jurisdiction has been vested in special courts variously called courts of probate, surrogates' courts, orphans or county courts. 19 Am. & Eng. Enc. Law, (1st Ed.), 162; Perry on Trusts, Sec. 182.

But the entire subject of trusts and their enforcement has always been and now is exclusively under the control of courts having equity jurisdiction and power. Pomeroy's Equity Jurisprudence, Sec. 1128; 27 Am. & Eng. Enc. of Law, (1st Ed.), 271; *Conklin* v. *Egerton,* 21 Wend., 430.

The jurisdiction of the probate court of Michigan has not

been enlarged by statute to include any jurisdiction over trusts, but on the contrary, the exclusive jurisdiction of chancery in such matters has been repeatedly affirmed, both by statute and decisions. *Rodman* v. *Nathan,* 45 Mich., 607; *Weaver* v. *Van Akin,* 77 Mich., 588; *Ledyard's Appeal,* 51 Mich., 625; *Wooden* v. *Kerr,* 91 Mich., 188; *McBride* v. *McIntyre,* 91 Mich., 408; nor could the probate court of Michigan by any grant of letters of special administration obtain any authority over this trust property.

At common law the power of a special administrator, *pendente lite,* were strictly limited to the collection of assets. Woerner's Am. Law Adm., 401; 11 Am. & Eng. Enc. Law, (2d Ed.), 1339.

VII. Upon the probate of the will here, the Probate Court of Lucas County, Ohio, acquired jurisdiction over this trust and its execution, and over these trustees. That jurisdiction then acquired has not in any way been divested and is exclusive. Sections 6328 and 6330.

In their reply brief counsel for plaintiffs in error cited and commented upon the following additional authorities:

*Tainter* v. *Clark,* 13 Metc., 220; *Dunning* v. *Bank,* 61 N. Y., 497; *Creamer* v. *Holbrook,* 99 Ala., 52; *Marx* v. *McGlynn,* 88 N. Y., 357; *Donovan* v. *Van DeMark,* 78 N. Y., 244; *Tobias* v. *Ketchum,* 32 N. Y., 319; *Hubbard* v. *Housley,* 59 N. Y. S., 392; *Hoddon* v. *Hemingway,* 39 Mich., 615; *Morse* v. *Morse,* 85 N. Y., 53.

*Charles G. Wilson* and *Elbridge F. Bacon,* for defendant in error.

I. William R. Stafford, by virtue of his appointment as executor of the estate of Mabel Crawford, deceased, by the Probate Court of Lucas County, Ohio, had no authority to administer that portion of said estate, personal or real, that was situate in the state of Michigan. *Vaughan* v. *Northup,* 15 Pet., 5; Story on Conflict of Laws, 876, 877, 878.

This is the uniform doctrine of the courts, both state and federal. *Stacy* v. *Thrasher,* 6 How., 44; *Aspden* v. *Nixon,* 4 How., 467; *McLean* v. *Meek,* 18 How., 16; *Porter* v. *Heydock,* 6 Ver., 374; *Parsons* v. *Lyman,* 20 N. Y., 103; *Grant* v. *Reese,* 94 N. C., 720; *Plummer* v. *Brandon,* 5 Ired. Eq., 190; *Dent's Appeal,* 22 Pa. St., 514.

This is the rule both in Ohio and Michigan. *Wills* v. *Cowper,* 2 Ohio, 124; *Reynolds* v. *McMullen,* 55 Mich., 568; *McIntire* v. *Conrad,* 93 Mich., 526.

Where there are two administrators of an estate, one of the domicile of the deceased, and one in another state, the latter, or ancillary administration, as it is called, is not subservient or dependent upon the administration of the domicile, but is entirely separate, distinct and independent. *Assurance Society* v. *Vogel's Exr.*, 76 Ala., 441; *Henderson, Admr.*, v. *Clarke*, 4 Littell, 277; *Burbank* v. *Payne*, 17 La. Ann., 15; *Banta* v. *Moore*, 15 N. J. Ch., 97; Story on Conflict of Laws, 893, Sec. 521; 1 Woerner Am. Law Adm., 720.

Where the same person is appointed executor or administrator, for the same estate, both in the state of the domicile of the deceased, and in another state where there are assets of the estate, he nevertheless acts in different capacities and in law is regarded as two different persons: *Emery* v. *Batcheldor*, 132 Mass., 452; *Graveley* v. *Graveley*, 25 S. C., 1; *Park's Appeal*, 61 Pa. St., 478.

This separate and distinct character of the domiciliary and ancillary administration, is so complete, that a judgment rendered against the one, within the jurisdiction of his appointment, is not even *prima facie* evidence of a claim as against the other, within the jurisdiction of his appointment. Story on Conflict of Laws, 894, Sec. 522; 1 Woerner Am. Law. Adm., 260, Sec. 158.

From the foregoing cases we conclude that the appointment of Mr. Stafford in Michigan, as special administrator, and executor, was, on general principles, both proper and necessary.

II.   Under the statutes of the state of Michigan, the will of Mabel Crawford, deceased, did not vest in Stafford the title to either the personal or real property of said estate, situate in Michigan, until the will was duly probated or allowed in that state.

Whatever may be the law of Ohio, or the general rule of law in the United States, as to the rights of Stafford under the will of Mabel Crawford, whether as executor or as trustee, the fact remains, that almost all of this estate was situate in the state of Michigan, and consisted mostly of real estate. Therefore, if the statutes or decisions of Michigan, have prescribed the rule of law in such cases, that rule must control

We call attention to Section 5804 of Howell's Revised Statutes of Michigan. This being the statute law in Michigan on this subject, it was not only proper, but necessary, that Mr. Stafford should cause this will to be allowed and recorded in Huron county, Michigan, where the *bulk of this estate* was situated.

We have the same statutory provisions in Ohio, Section 5942, Revised Statutes.

This is the exact language of Section 33 of the act relating to wills found in 1 Curwen's Statutes, 689; *Vining v. Bricker*, 14 Ohio St., 331.

III.   Upon the allowance of the will of Mabel Crawford in Huron county, Michigan, which was necessary, as we have seen, in order to pass title thereunder, it became mandatory under the statutes of Michigan, upon the Probate Court of said Huron County, to grant letters testamentary, or letters with the will annexed.

All the sections relating to the allowance of foreign wills in Michigan, are Sections 5805, 5806, 5807 and 5808, Howell's Statutes.

In some states, the granting, or not granting, of ancillary administration, depends upon the existence, or non-existence of debts due in such state.   Under the sections above quoted, the only question is: Did the testator have real and personal property in said Huron county, on which the will of Mabel Crawford operated?

IV.   Under the statutes of Michigan, it was necessary that Mr. Stafford, or some one else, should be appointed special administrator for the care and preservation of the Michigan assets, during the contest of the will of Mabel Crawford in Ohio, which lasted from June, 1891, to January, 1893.

V.   The Probate Court of Huron County, Michigan, having jurisdiction of this ancillary administration, had authority to require an accounting from Stafford, its appointee.   In fact it was its duty to require such an accounting, and consequently, it had full jurisdiction to pass upon all accounts filed in pursuance thereof, and to allow or disallow the same.

Nor would it make any difference in this regard, that such appointee is what is designated as an ancillary administrator or executor.

There is a good deal more imagination than substance in the difference between a *domiciliary* and an *ancillary administrator*. *Harvey v. Richards*, 1 Mass., 381.   Applying this doctrine to the case at bar, the Michigan administration would be the principal administration.

The authorities are abundant that the auxiliary administrator or executor must account to the tribunal from which he obtained his

appointment. Story on Conflict of Laws, 876, Sec. 513; *Vaughan* v. *Northup*, 15 Pet., 1; *Parsons* v. *Lyman*, 20 N. Y., 103; *Campbell* v. *Sheldon*, 13 Pick., 8.

While this exact point has not been decided in Ohio, it is embraced within the decision of the court in *Williams' Admrs.*, v. *Welton's Admr.*, 28 Ohio St., 451; *Dickinson* v. *Seaver*, 44 Mich., 624; Sections 5835, 5854 and 5957, Howell's Statutes.

VI. It follows, therefore, from this jurisdiction to require an accounting, that when exercised, and when such accounts had been adjudicated, in the proper courts in Michigan, under Section 1, Article IV, of the Constitution of the United States, full faith and credit should be given to such adjudication by the courts of Ohio, and that the same would be conclusive as to all matters therein involved.

VII. If the testator intended to create a separate and distinct office of trustee, nevertheless, under the will of Mabel Crawford, deceased, it was necessary that the executor should first qualify, reduce the estate to money, account to the proper court for the proper administration of his trust as executor, and then pay over to the trustee, *all sums of money* which were the subjects of the several trusts provided for in the will.

· Most authorities hold the doctrine that when real and personal property is devised to an executor in trust, with power to sell the same, and to pay over or invest the proceeds as trust funds, the person named in the will as trustee can not take such property, although the same person be named both as executor and trustee, until such will is probated, letters of administration taken out, said property converted into money, and such executor has fully discharged his duties as executor, and not then until such fund has been distinctly set apart as trust property. Woerner's Am. Law Adm., 391, Sec. 177; *Newcomb, Judge,* v. *Williams,* 9 Metc., 525; *In re Higgins Estate,* 15 Mont., 474; *Crocker* v. *Dillon,* 133 Mass., 91; *White* v. *Ditson,* 140 Mass., 351; *Estate of Hood,* 98 N. Y., 363; *Wall* v. *Bissell,* 125 U. S., 382; *Everson* v. *Pitney,* 40 N. J. Eq., 539; *Hood* v. *Hood,* 85 N. Y., 561; *Williams* v. *Cushing,* 34 Me., 371; *In re Sanborn Estate,* 109 Mich., 191.

VIII. That under the will of Mabel Crawford, deceased, as construed by the rules laid down by the Supreme Court of Ohio, said Stafford took title to both the real and personal property of said estate as "executor" and not as "trustee," and the trusts cre-

ated by the will attached to his office of executor and were not separate and distinct therefrom. *Gandolfo* v. *Walker,* 15 Ohio St., 251; *Mathews, Admr.,* v. *Meek,* 23 Ohio St., 272.

Every state has the exclusive right to regulate the transfer of all property, both real and personal, within its limits, either by last will or *inter vivos,* and such transfer must be made in accordance with the laws of the state where it is situated. Wharton's Conflict of Laws, Par. 571, 573; *Smith* v. *Bank,* 5 Pet., 518; *Green* v. *Van Buskirk,* 5 Wall., 307; *Green* v. *Van Buskirk,* 7 Wall., 139; *Investment Co.* v. *Caldwell,* 152 U. S., 66; *De Vaughn* v. *Hutchinson,* 165 U. S., 566; *Heydock's Appeal,* 7 N. H., 496; *Mahorner* v. *Hooe,* 9 *Smed & Mar.,* 247.

The probate of the will in Ohio would not give the executors any authority to act in Michigan, or take charge of and sell or in any manner intermeddle with the property of the estate situated in Michigan; but in order to authorize them to settle up the estate in Michigan the will must be probated there and letters testamentary issued to the executors, and the estate settled under the probate laws of Michigan. Howell's Stat., Secs. 5801, 5804-08, 5834-35, 5837-38; *Dickinson* v. *Seaver,* 44 Mich., 624; *Gibson* v. *Van Syckle,* 47 Mich., 439; *Mower's Appeal,* 48 Mich., 441; *Reynolds* v. *McMullen,* 55 Mich., 568; *McIntire* v. *Conrad,* 93 Mich., 526; *Kerr* v. *Moon,* 9 Wheat., 565; *McCormick* v. *Sullivant,* 10 Wheat., 192; *Armstrong* v. *Lear,* 12 Wheat., 169; *Cabanne* v. *Skinker,* 56 Mo., 357.

While the will devises this property to the executors in trust, to carry out the provisions of the will, and directs them to sell the lands and distribute the proceeds among the legatees, thus converting the lands into personalty, still the trust imposed by the will devolves upon the executors in their official capacity as such, and they can not take possession of this property and dispose of it as trustees under the will without the probate of the will and the issuing of letters testamentary, and until the will has been probated and letters testamentary have been issued, as required by the laws of the state of Michigan, where the property is situated, they have no authority whatever over the property. Howell's Stat., Secs. 5801, 5804-5808, 5834-35, 5837-38, 5869; *In re Sanborn Estate,* 109 Mich., 191; Woerner's Am. Law Adm., Sec. 186; Wharton's Conflict of Laws, Sec. 604; *McIntire* v. *Conrad,* 93 Mich., 526; *Wall* v. *Bissel,* 125 U. S., 382; *Colt* v. *Colt,* 111 U. S., 566;

*McArthur* v. *Scott,* 5 O. F. D., 357; 113 U. S., 340; *Newcomb* v. *Williams,* 9 Metc., 525; *Drury* v. *Inhabitants of Nantick,* 10 Allen, 169; *Crocker* v. *Dillon,* 133 Mass., 91; *In re Higgins Estate,* 39 Pac. Rep., 506; *Bellinger* v. *Thompson,* 37 Pac. Rep., 714; *Slagg* v. *Jackson,* 1 N. Y., 206; *Hood* v. *Hood,* 85 N. Y., 561; *Matter of Hood,* 98 N. Y., 363; *Everson* v. *Pitney,* 40 N. J. Eq., 539.

The laws of Michigan require the executors and administrators to account to the probate court of the county in which they are appointed, and as each state has exclusive authority over the disposition of all the property within its limits, it follows that an executor or administrator appointed in one state is exclusively bound to account for all the assets which he receives under and in virtue of his administration, to the proper tribunal of the state from which he derives his authority, and the tribunals of other states have no right to interfere with or to control the application of those assets according to the laws of the situs. Howell's Stat., Secs. 5813, 5957-59, 5962, 6809-6811; *Normand* v. *Grognard,* 17 N. J. Eq., 425; *Duffy* v. *Smith,* 1 Dem., 202; *Holcomb* v. *Phelps,* 16 Conn., 127; *Jennison* v. *Hapgood,* 10 Peck., 77; *Morrill* v. *Morrill,* 1 Allen, 132; *Clark* v. *Blackington,* 110 Mass., 369.

The account of the executor or administrator, whether partial or final, when allowed by the probate court or the circuit court or Supreme Court on appeal, is, under the laws of Michigan, a final adjudication of all the items contained therein, and is not subject to review either in a subsequent accounting or a collateral proceeding. *Hall* v. *Grovier,* 25 Mich., 428.

The settlement of the accounts of William R. Stafford as special administrator and executor of the Mabel Crawford estate, situate in Michigan, made by the Probate and Circuit Courts of Huron County, Michigan, and affirmed by the Supreme Court of Michigan, being under the laws of Michigan a final adjudication of such accounts, the courts of Ohio are concluded by such decisions, and are bound to give them full force and effect as to such accounts. Const. of U. S., Art. IV, Sec. 1.

After the estate is fully settled in Michigan, the court may, in its discretion, distribute the balance among the persons entitled to it under the will, or it may remit the balance to the Probate Court of Lucas County, Ohio, for final distribution. How. Stat., Sec. 5808; Woerner's Law Adm., 67; *Dickinson* v. *Seaver,* 44 Mich.,

624; *Harvey* v. *Richards*, 1 Mass., 381; *Welch* v. *Adams*, 152 Mass., 74; *Fretwell* v. *McLemore*, 52 Ala., 124; *Carr* v. *Lowe*, 7 Heisk., 84; *Re Hughes*, 95 N. Y., 55.

SPEAR, J.; BURKET, C. J.; DAVIS, SHAUCK, PRICE and CREW, JJ., concur.

The elaborate and very able arguments of counsel, both oral and by brief, invite to an extended discussion of numerous questions germain to the issues covered by the record; but, as we view the case, many of the propositions become unimportant, and the vital questions which are determinative of the rights of the parties in this court may be disposed of in a comparatively limited space.

Briefly stated the claim of the plaintiffs in error, as put by their counsel, is that: Under the terms of item nine of the will the title to all the real estate (wherever situated) was devised to W. R. Stafford and Clay Crawford as devisees in trust; that upon the prebate of the will in Ohio and the acceptance of the trust by Stafford and Crawford, the fee simple title to all real estate in Michigan and elsewhere vested in them as such devisees in trust, and the Probate Court of Lucas County, Ohio, then acquired jurisdiction of such trust and of the trustees; that the probate courts in Michigan have no jurisdiction over testamentary trusts or trustees, chancery having exclusive jurisdiction thereof; that the exceptions which were disallowed covered items amounting to several thousand dollars of moneys received from the sales of land, and the products thereof, and expenditures for the cultivation of the land, all which items form part of the trustees' accounts over which a court of chancery has jurisdiction. Hence the confirmation of Stafford's accounts by the Probate Court of Huron County, Michigan, as to these trustee items, was without jurisdiction and void.

That the title to the land is derived from the will and that it vested in Stafford and Crawford as devisees in trust upon their acceptance and qualification as such, and that the Probate Court of Lucas acquired jurisdiction as to matters relating to the trust which should arise out of assets in Ohio, need not be disputed, but the assumption that that court acquired jurisdiction over the conduct of the executors and trustees with respect to lands lying outside the limits of the state of Ohio, does not follow. The claim is directly in conflict with the general rule, held in *Vaughan* v. *Northup*, 15 Pet., 1, to be: "Every grant of administration is

strictly confined in its authority and operation to the limits of the territory of the government which grants it, and does not, *de jure,* extend to other countries. It can not confer, as a matter of right, any authority to collect assets of the deceased in any other state; and whatever operation is allowed to it beyond the original territory of the grant is a mere matter of courtesy which every nation is at liberty to yield or to withhold according to its own policy and pleasure, with reference to its own institutions, and the interests of its own citizens." The same doctrine is announced by Justice Story, in his Conflict of Laws, where, at Section 514, it is stated: "It is exceedingly clear that the probate grant of letters testamentary or of letters of administration in one country give authority to collect the assets of the testator or intestate only in that country, and do not extend to the collection of assets in foreign countries; for that would be to assume an extra-territorial jurisdiction or authority, and to usurp the functions of the foreign local tribunals in that matter. It is no answer to say that the effects of the testator or intestate are assets wherever they are situated, whether at home or abroad. * * * The question is not whether they are assets or not, but who is clothed with authority to administer them; and this must be decided by the local jurisdiction where they are situated, for the original administration has no extra-territorial operation." Again, speaking of ancillary administration, the author (Section 513) observes: "Still, however, the new administration is made subservient to the rights of the creditors, legatees and distributees who are resident within the country wherein it is granted; and the residuum is transmissible to the foreign country only when a final account has been settled in a proper tribunal where the new administration is granted, upon the equitable principles adopted by its own law in the application and distribution of the assets found there." This is recognized law in Michigan, *Reynolds* v. *McMullen,* 55 Mich., 568; *McIntire* v. *Conrad,* 93 Mich., 526; in New York, *Parsons* v. *Lyman,* 20 N. Y., 103, and seems to be the uniform doctrine of all the courts. It has been regarded as the law of Ohio from early times. In *Wills* v. *Cowper,* 2 Ohio, 124, Sherman, J., expresses it thus: "But the very appointment, as well as the power of an administrator over the estate of a decedent, emanates from the laws of the country where he receives his appointment. The extent of his authority, and the manner in which it shall be exercised, depend

upon legislative enactments, and is confined to the jurisdiction of the country granting the administration. *Doe* v. *McFarland,* 9 Cranch, 151. An administrator, as such, can not intermeddle with the effects of his intestate in another state, unless permitted to do so by the laws of that state; otherwise it would be in the power of one state to regulate the distribution of property situated in another. And the rule is the same whether the administration be general or with the will annexed. In either case the authority of the administrator emanates from the law, and can not extend beyond the jurisdiction of the power conferring the authority; and the will being annexed to the grant of administration, does not change the tenure by which the administrator holds his office."

It follows from this that the executors could have only such authority over the Michigan lands as is given by the laws of that state, and they provide for the appointment by the probate court of a special administrator where the validity of a will (as in this case) is contested, and of course such administrator would have to account to the court which appointed him. *Dickinson* v. *Seaver,* 44 Mich., 624; 3 Miller's Compiled Laws of Michigan, paragraphs 9326, 9345, 9346, 9347. It is plain that the executors named in the will could have and did have, as such, no authority over the Michigan property so long as it was controlled by the special administrator, and it is not of consequence that the administrator was one of the persons named as executor. His authority came from the Probate Court of Huron County, and to that court alone was he required to account. And when the will was probated in Huron county, and letters testamentary issued, it became, by the statute of that state, the duty of the special administrator to turn over to the executor the property in his hands, which was done, and the executor then succeeded to all the powers of the special administrator, and was subjected to the same duty to administer according to the laws of Michigan, and to account to the probate court for his conduct. Same statute, paragraphs 9330, 9345. All these steps seem to have been taken strictly in accordance with the laws of that state, and it is clear, from these statutory provisions, that the state of Michigan has not, by comity or otherwise, extended the right of an Ohio administrator or executor to administer the trust as to property in Michigan in any other way or manner than subject to the laws of Michigan.

It results that the adjudication of the courts of Michigan as to this estate is conclusive upon the plaintiffs in error appearing in those courts, and settles the controversy here against them, unless it is shown that such adjudication was without jurisdiction. The proposition urged by counsel, it will be borne in mind, is that the accounts rendered by Stafford to the Probate Court of Huron County, Michigan, were accounts as trustee, and not as executor, and that the court was without jurisdiction to adjudicate them, such jurisdiction being lodged exclusively in the chancery courts. An ingenious argument is produced in support of this proposition, but we do not find it necessary to give the question serious consideration in view of the action of the parties subsequent to the judgment of the probate court. Recurrence to the record shows that Clay Crawford, in appearing as an exceptor in the Probate Court of Huron County, represented not only himself but specially two of the plaintiffs in error, viz: the Protestant Orphans' Home and the Washington Street Congregational Church. From the judgment of the probate court respecting one of Stafford's accounts, Crawford, representing directly the other parties as well as himself, appealed to the circuit court of that county, and as to the judgment respecting the other account, he, with his co-exceptors, followed Stafford's appeal to that court, and there, as he had done in the probate court, took issue as to the justice and equity of the items of the accounts, and challenged the right of the probate court to take cognizance of the items thereof on the ground that they were only cognizable by the Lucas County Probate Court. In short, the cause was tried in the circuit court on its merits. It does not appear that any objection was made because of any lack of jurisdiction in the circuit court to hear and determine the issue, nor was there any objection respecting the way in which the controversy reached that court. Indeed it seems to be conceded that the circuit court is a court of general jurisdiction, thus possessed of power to pass upon its own jurisdiction, having also chancery powers; and such we understand to be the fact. Miller's Compiled Laws, paragraph 415. The parties, therefore, were then in a court which, according to the theory of plaintiffs in error, was such a court as should have been resorted to in the first instance. In that court the parties joined issue and the cause went forward to final judgment. How can the parties who

then entered their appearance at the trial and submitted their controversy be heard now to dispute the jurisdiction of that court. We think they can not. That the cause got into that court by appeal from a court which had not jurisdiction of it (if that be the case), rather than by original pleadings and process, was after all but an irregularity not affecting any substantial right, and one which may be waived. The record shows that it was waived. It was in legal effect not different from the submission of an agreed case, practice familiar to us by virtue of Section 5207, Revised Statutes, respecting any controversy of which the court would have jurisdiction if an action were brought, and which seems to be authorized by the law of Michigan. 3 Compiled Laws, paragraph 10414.

We hold the law to be that where parties voluntarily, and without objection, submit to a court having jurisdiction of the subject matter, their controversy, and the cause proceeds therein regularly to trial and final judgment, they will be held to have waived their right to object to the jurisdiction of that court even though the cause had been taken into it by an appeal from an inferior court which had not jurisdiction of the subject matter. The cases of *Pennywit* v. *Foote,* 27 Ohio St., 600; *Spier* v. *Corll,* 33 Ohio St., 236; *Scobey* v. *Gano,* 35 Ohio St., 550, and *Cross* v. *Armstrong,* 44 Ohio St., 613, cited and relied upon by counsel, have no application to the facts of this case, but the principle involved more resembles *Hallam* v. *Jacks,* 11 Ohio St., 692; *Collins* v. *Davis,* 33 Ohio St., 567; *Andrews* v. *Youngstown,* 35 Ohio St., 218; *Kershaw* v. *Snowden,* 36 Ohio St., 181, and *Jones* v. *Booth,* 38 Ohio St., 405.

If the conclusion that the parties who appeared as exceptors in the Circuit Court of Huron County and now appear here as plaintiffs in error can not question the jurisdiction of that court as well founded, equally are the other plaintiffs in error forbidden to question it. Having applied to be admitted as parties in the Common Pleas of Lucas County, as legatees under the will, and there having been properly held to belong to a class for whose benefit the action had been prosecuted, and having there adopted as their own the exceptions filed by the Protestant Orphans' Home, their rights as plaintiffs in error rest upon the same foundation and are to be measured by the same rule that applies to the others who seek relief at the hands of this court.

It is suggested that the error case in the Supreme Court of Michigan was not heard on its merits but was disposed of on the ground of a defect in the record. Nevertheless the judgment of the circuit court was affirmed, and the determination is equally conclusive as a final judgment.

Having determined that the cause was heard and decided by a court of Michigan possessed of adequate jurisdiction to entertain and adjudicate it, and applying to the case the mandate of the Constitution of the United States (Article IV, Section 1), that: "Full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state," we necessarily reach the further conclusion that the settlement of the accounts of Stafford as special administrator and as executor, made by the Circuit Court of Huron County, Michigan, and affirmed by the Supreme Court of that state, is conclusive upon the courts of Ohio as a final adjudication of those accounts, and that the judgment of the Lucas Circuit Court and of the Common Pleas holding this to be the law should be affirmed.

*Judgment affirmed.*